### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

<table>
<tr><td>

Zhenhai Wei, *et al.*,

               Plaintiffs,

v.

Sichuan Pepper, Inc. d/b/a Sichuan Pepper *et al.*,

               Defendants.

</td><td>

Civil No. 3:19-CV-00525 (JBA)

January 17, 2022

</td></tr>
</table>

### REPORT AND RECOMMENDATION

## I.    INTRODUCTION

This is an action under the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and the Connecticut Minimum Wage Act ("CMWA"), Conn. Gen. Stat. §§ 31-68 *et seq.* (*See generally* Pls.' Am. Compl., ECF No. 54.)  The plaintiffs Zhenhai Wei, Fangqiong Zhong, Junjie Zhu and Fanhe Meng ("Plaintiffs") worked for the defendants Sichuan Pepper Inc., Michael Shieh and Jane Ye ("Defendants") at the Sichuan Pepper restaurant in Vernon, Connecticut.  (*Id.* ¶¶ 10-13.)  They allege that the Defendants "fail[ed] to pay . . . minimum wage for each hour worked and overtime compensation for all hours worked over forty (40) each week."  (*Id.* ¶ 2.) Among other things, they seek "[a]n award of unpaid minimum wages and overtime wages due under [the] FLSA and CMWA . . . plus compensatory and liquidated damages."  (*Id.* at 19.)

During the discovery phase of the case, the Plaintiffs learned that the restaurant had been sold to an entity known as Tian LLC.  (*See id.* ¶ 5.)  They amended their complaint to plead claims against Tian LLC and its principal, Tianxiang Cheng (together, the "Tian Parties"), under a theory of successor liability.  (*Id.* ¶¶ 6-7.)  The Tian Parties then asserted counterclaims against the

Plaintiffs and crossclaims against the Defendants.  (ECF No. 68.)  In substance, the Tian Parties alleged that the Defendants defrauded them during the sale of the restaurant (*id.* ¶ 129), and they sought damages and rescission of the contract of sale.  (*Id.* at 14-16.)

After the Defendants repeatedly failed to meet their discovery obligations, Senior United States District Judge Janet Bond Arterton entered a default judgment against them and in favor of the Plaintiffs pursuant to Fed. R. Civ. P. 37(b)(2)(A)(vi).  (ECF Nos. 65, 81.)  And after the Defendants failed to plead in response to the Tian Parties' crossclaims, the Clerk of the Court entered a default with respect to those claims under Fed. R. Civ. P. 55(a).  (ECF No. 80.)  Judge Arterton then referred the case to me – United States Magistrate Judge Thomas O. Farrish – to make a recommendation on the damages to be awarded to the Plaintiffs, and to consider the Tian Parties' motion for default judgment under Rule 55(b).  (ECF Nos. 83, 85, 94.)

For the reasons that follow, and as set forth more fully in Section IV below, I recommend that:

A.  Judgment enter in favor of the plaintiff Zhenhai Wei in the amount of $26,965.88, plus prejudgment interest of $7.39 per day beginning on June 6, 2017, and running through the date of the judgment;

B.  Judgment enter in favor of the plaintiff Fangqiong Zhong in the amount of $9,184.58, plus prejudgment interest of $2.52 per day beginning on February 17, 2018, and running through the date of the judgment;

C.  Judgment enter in favor of the plaintiff Junjie Zhu in the amount of $22,978.28, plus prejudgment interest of $6.30 per day beginning on February 1, 2018, and running through the date of the judgment;

D. Judgment enter in favor of the plaintiff Fanhe Meng in the amount of $8,154.66, plus prejudgment interest of $2.23 per day beginning on May 10, 2018, and running through the date of the judgment;

E. Each of the aforementioned judgments enter jointly and severally against each of the three Defendants;

F. The Plaintiffs be awarded attorneys' fees in the amount of $35,918.40;

G. The Plaintiffs be awarded costs in the amount of $698.15; and

H. The Tian Parties' motion for default judgment be denied without prejudice.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Plaintiffs' Claims Against the Defendants

The Plaintiffs filed this lawsuit on April 19, 2019.  (Compl., ECF No. 1.)  In their complaint, each of the four Plaintiffs alleged that he worked at the Sichuan Pepper restaurant at 435 Hartford Turnpike in Vernon, Connecticut.  (*Id.* ¶¶ 7-10.)  Zhenhai Wei claimed to have worked at the restaurant from May 13, 2016, to June 30, 2018, "as a sorter and wok fry cook."  (*Id.* ¶ 7.)  Fangqiong Zhong claimed to have been employed "as a Sorter and miscellaneous worker" from October 9, 2017, to June 28, 2018.  (*Id.* ¶ 8.)  Junjie Zhu said that he worked there "as a Chef" from September 5, 2017, to July 1, 2018, (*id.* ¶ 9) and Fanhe Meng claimed to have been employed "as a Dishwasher and miscellaneous worker" from March 20, 2018, to June 30, 2018.  (*Id.* ¶ 10.)

The Plaintiffs sued Sichuan Pepper Inc., the corporation that owned the restaurant.  (*Id.* ¶ 11.)  They alleged that the corporation was subject to the FLSA because it was "a business engaged in interstate commerce that ha[d] gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year."  (*Id.* ¶ 12; *see also* Joint Rpt. of Rule 2.)  They also sued two "owner/operator defendants," Michael Shieh and Jane Ye.  They claimed that Mr. Shieh and Ms. Ye "had the power

to hire and fire employees," "supervised and controlled employee work schedules or conditions of employment," "determined the rate and method of payment," and "maintained employee records." (Compl., ECF No. 1, ¶¶ 14, 16.)

The Plaintiffs alleged that the Defendants violated the minimum wage provisions of the FLSA and CMWA, 29 U.S.C. § 206 and Conn. Gen. Stat. §31-62, respectively.  (*Id.* ¶¶ 72-82.) They also alleged that the Defendants violated the overtime provisions of the two statutes, 29 U.S.C. § 207 and Conn. Gen. Stat. § 31-76c.  (*Id.* ¶¶ 83-97.)  Their complaint was styled as a "29 U.S.C. § 216(b) Collective Action & Fed. R. Civ. P. 23 Class Action."  (*Id.* at 1.)  They sought "[a]n award of unpaid minimum wage and overtime wages due under FLSA and CMWA," "[a]n award of liquidated and/or punitive damages as a result of Defendants' knowing and willful failure to pay wages at least the hourly wage [and] overtime compensation pursuant to 29 U.S.C. § 216," "[a]n award of costs and expenses . . . together with reasonable attorneys' fees," and other items of relief "on behalf of themselves, and on behalf of the FLSA Collective and Rule 23 Class." (*Id.* at 18-19.)

Attorney Jian Hang appeared for the Defendants on April 30, 2019, (ECF No. 7) and he filed an answer on their behalf on June 6, 2019.  (ECF No. 14.)  In their answer, the Defendants denied the material allegations of the complaint, including the allegations about gross sales and interstate commerce through which the Plaintiffs sought to establish the applicability of the FLSA, and the allegations about Mr. Shieh's and Ms. Ye's control over wages and hours.  (*See generally id.* & ¶¶ 12-14 and 16.)  The Defendants also asserted a number of affirmative defenses, including failure to state a claim, compliance with the law, good faith, and failure to mitigate damages.  (*Id.* at 10-11.)  As will be discussed further below, they did not assert any statute of limitation as an affirmative defense.  (*See id.*)

Although the Defendants filed their answer within the court-ordered deadline (*see* ECF Nos. 13, 14), they soon began to miss other deadlines.  On November 26, 2019, the parties agreed upon a procedure for providing notice to potential members of the putative FLSA collective.  (ECF No. 20.)  On December 19, 2019, Judge Arterton ordered the parties to comply with the terms of their stipulation, which had the effect of requiring the Defendants to provide Plaintiffs' counsel with a list of non-exempt kitchen employees by January 3, 2020.  (*See* Order, ECF No. 21.)  Yet when that date arrived, the Defendants filed a motion for a forty-five-day extension, claiming that Mr. Shieh's holiday travels prevented him from timely complying with the order.  (ECF No. 22.)  Judge Arterton denied the motion, observing that the Defendants had not shown "good cause for granting this extension in this unfair wage case where counsel stipulated to the disclosure schedule."  (Order, ECF No. 24.)  She added that the Defendants also had not shown "that this discovery could not have been prepared in anticipation of Defendant Shieh's travel, nor that it cannot be compiled by others while he travels."  (*Id.*)

The Defendants then missed several other discovery-related deadlines.  On March 29, 2020, the Plaintiffs served interrogatories and requests for production.  (ECF No. 35-1.)  When the Defendants failed to respond within the time required by Rules 33 and 34, the Plaintiffs filed a motion to compel on June 12, 2020.  (ECF Nos. 34, 35.)  The Defendants then compounded their non-compliance by failing to respond to the motion within the time required by Local Rule 7.  Judge Arterton therefore granted the Plaintiffs' motion "absent objection," and ordered the Defendants to "comply with discovery requests . . . by August 6, 2020."  (Order, ECF No. 39.)  She also permitted the Plaintiffs to file an "Affidavit with supporting documentation for attorneys' fees," as they had requested in their memorandum of law.  (*Id.*)

The Defendants then failed to meet the August 6th deadline.  Six days later, Attorney Hang moved for leave to withdraw his appearance.  (ECF No. 46.)  In a supporting affidavit, he stated that the Defendants had "been delinquent in their payment of legal fees," and had "refused to cooperate . . . in defending this matter, including ignoring repeated phone calls . . . and requests for conferences about case strategies."  (ECF No. 46-1.)  He further stated that he had "been unable to reach Mr. Shieh, the contact person for Defendants, as of August 3, 2020."  (*Id.*)  The Plaintiffs opposed Attorney Hang's motion, asserting that his withdrawal "would result in an undue delay of the pending litigation."  (ECF No. 48, at 4.)  Judge Arterton agreed that "Mr. Hang's withdrawal [would] unquestionably disrupt this litigation," and denied his motion.  (Order on Defs.' Mot. to Withdraw, ECF No. 60, at 2.)

On October 1, 2020, the Plaintiffs moved for an order directing the Defendants to show cause why they should not be sanctioned for failing to comply with discovery.  (ECF No. 59.)  Their motion recited that the Defendants had not responded to their interrogatories and requests for production, as Judge Arterton had ordered them to do by August 6th.  (*Id.* at 1; *see also* ECF No. 39.)  It also recited that the Defendants had not made themselves available for depositions that had been planned for August 14th, and that they had not paid the attorneys' fees that the Plaintiffs incurred in connection with the earlier motion.  (ECF No. 59, at 2.)  Observing that "[l]esser sanctions, including monetary sanctions following Plaintiffs' motion to compel, have already proved non-efficacious," the Plaintiffs requested "a sanction of default against the Defendants."  (*Id.*)

Although they were still represented by counsel, the Defendants did not respond to the Plaintiffs' motion for sanctions.  The Court nonetheless gave them yet another chance to avoid default, but it notified them that "if they are not in fully compliance with this Court's orders . . .

6

by 5:00 p.m. December 11, 2020, default judgments will be entered against them which may only

be set aside under Fed. R. Civ. P. 60." (Order, ECF No. 65.) It added that "[i]f default judgments

are entered, this case will be set down for a Hearing on Damages to receive evidence enabling the

Court to determine the amounts of the judgments to be entered in favor of each Plaintiff and against

each Defendant." (*Id.*)

The Defendants did not comply with the December 11th deadline, and Judge Arterton

therefore entered default judgments against them. (ECF No. 81.) She then referred the case to me

"for the purpose of conducting a hearing in damages." (ECF No. 83.) Shortly after the referral I

held a scheduling conference, at which the Plaintiffs' counsel stated that he wished to present his

clients' damages evidence by affidavit. (Order, ECF No. 86.) I allowed him four weeks to submit

those affidavits, and in my order I further allowed the Defendants – whose counsel still had an

appearance in the case – a full opportunity to "cross-examine the affiants, present . . . evidence of

their own, or otherwise oppose entry of a default judgment in the amounts sought by the plaintiffs."

(*Id.*; *see also* Order on Mot. for Ext. of Time, ECF 90.)

Each of the four Plaintiffs then submitted an affidavit in support of their damage claims,

supplemented by a summary exhibit prepared by their counsel. (ECF No. 91-1 through 91-5.) The

four Plaintiffs' claims of course differ in their particulars, but they are similar in method. I will

discuss each Plaintiff's particulars in Section III below, but in this section, I will use Mr. Wei's

submission to illustrate their method of calculation.

Mr. Wei states that, from the start of his employment in May 2016 to the end of that year,

he "was paid a flat compensation of two thousand seven hundred Dollars ($2,700) per month."

(ECF No. 91-1, ¶ 16.) He then states that his monthly compensation increased periodically,

ultimately reaching "a rate of three thousand eight hundred dollars ($3,800) per month" for the last

two months of his employment.  (*Id.* ¶ 21.)  He says that he worked the same 66.16-hour shift every week.  (*See id.* ¶ 12; *see also* ECF No. 91-5, at 1.)

Mr. Wei then translated his various levels of compensation into a "regular rate" for minimum wage and overtime purposes.  Instead of treating his monthly pay as if it was intended to compensate the 66.16 hours that he worked each week, he calculated his regular rate as if the pay was intended to compensate only a forty-hour week, evidently in reliance on the "rebuttable presumption that" a weekly or monthly salary "covers 40 hours" of work per week.  *Estanislau v. Manchester Developers, LLC*, 316 F. Supp. 2d 104, 108 (D. Conn. 2004); *see also* discussion, Section III.B.2 *infra*.  This choice had the effect of dropping his minimum wage claim to zero, because dividing his monthly compensation in this way resulted in regular rates that exceeded both the federal and state minimum wages in each week he was employed.  (*See* ECF No. 91-5, at 1.) But it resulted in unpaid overtime claims totaling $74,946.24, as depicted in this chart:

| **A** Work Period | **B** Total Hours Per Week | **C** Monthly Pay | **D** Weekly Pay[1] | **E** Regular Rate (D/40) | **F** Overtime Rate (E x 1.5) | **G** Overtime Hours | **H** No. of Weeks in Period | **I** Total Overtime Claim (F x G x H) |
|---|---|---|---|---|---|---|---|---|
| 5/13/2016 – 12/31/2016 | 66.16 | $2,700 | $623.08 | $15.58/hr. | $23.37/hr. | 26.16 | 33.14 | $20,258.19 |
| 1/1/2017 – 6/30/2017 | 66.16 | $2,800 | $646.15 | $16.15/hr. | $24.23/hr. | 26.16 | 25.71 | $16,299.69 |
| 7/1/2017 – 12/31/2017 | 66.16 | $3,000 | $692.31 | $17.31/hr. | $25.97/hr. | 26.16 | 26.14 | $17,755.02 |
| 1/1/2018 – 1/31/2018 | 66.16 | $3,400 | $784.62 | $19.62/hr. | $29.43/hr. | 26.16 | 4.29 | $3,298.75 |
| 2/1/2018 – 4/30/2018 | 66.16 | $3,500 | $807.69 | $20.19/hr. | $30.29/hr. | 26.16 | 12.57 | $9,960.92 |
| 5/1/2018 – 6/30/2018 | 66.16 | $3,800 | $876.92 | $21.92/hr. | $32.88/hr. | 26.16 | 8.57 | $7,373.67 |
| | | | | | | | Total: | $74,946.24 |

---

[1]    Monthly pay times twelve months, divided by fifty-two weeks.  *See* 29 C.F.R. § 778.113 ("A monthly salary is subject to translation to its equivalent weekly wage by multiplying by 12 (the number of months) and dividing by 52 (the number of weeks).").

Mr. Wei also says that he is entitled to "Liquidated Damages in the Amount of $74,946.24." (ECF No. 91-1, ¶ 33.)  Additionally, he requests an award of "prejudgment interest in the amount of $29,546.12," which he calculates using a ten percent rate, the maximum allowable under Conn. Gen. Stat. § 37-3a.  All told, he seeks to recover $179,438.60 – overtime wages of $74,946.24, plus liquidated damages of $74,946.24, plus $29,546.12 in interest.  (ECF No. 91-5, at 5.)  Using the same calculation method, Mr. Zhong seeks $100,083.71; Mr. Zhu seeks $51,072.06; and Mr. Meng seeks $17,907.99.  (*Id.*)  Adding the four Plaintiffs' claims together yields a total figure of $348,502.37.  (*Id.*)

The Plaintiffs also request awards of attorneys' fees and costs.  They seek $63,245.00 in fees for work done by lawyers and staff at their principal law firm, Troy Law - $56,172.00 for work done by managing attorney John Troy (93.62 hours times $600/hour), $712.00 for work done by managing associate Aaron Schweitzer (1.78 hours times $400/hour), $2,004.00 for work done by paralegal Tiffany Troy (13.36 hours times $150/hour), $1,005.00 for work done by certified public accountant Maggie Huang (6.7 hours times $150/hour), and $3,352.00 for work done by managing clerk Preethi Kilaru.  (ECF No. 91, at 24.)  They also seek $4,761.50 in fees for work done by their co-counsel at Conover Law – $3,481.50 for 6.33 hours' worth of work done by Bradford Conover at $550 per hour, and $1,280 for 3.2 hours of work done by Molly Smithsimon at $400 per hour.  (ECF No. 92.)  Finally, they seek an award of $773.15 in costs associated with filing and serving the complaint, and with mailing notices and discovery requests.  (ECF No. 91-6, at 7 (seeking $298.15 in costs incurred by Troy Law); ECF No. 92 (seeking $475.00 in costs incurred by Conover Law).)

### B.      The Tian Parties' Counterclaims

As noted above, the Plaintiffs learned about the sale of the restaurant during the discovery phase of the case.  Apparently concluding that the transfer was part of a corporate shell game designed to avoid the Defendants' obligations under the FLSA and CMWA, the Plaintiffs sought leave to amend their complaint to add successor liability claims against Tian LLC and its principal, Tianxiang Cheng.  (*See* Mot. to Amend, ECF No. 49.)  The Defendants did not oppose the motion, and Judge Arterton granted it on September 17, 2020.  (ECF No. 53.)  The Plaintiffs filed their amended complaint the same day, and served it upon the Tian Parties later that month.  (ECF Nos. 54-57.)

The Tian Parties answered the amended complaint on December 9, 2020.  (ECF No. 68.) After denying the material allegations of the Plaintiffs' successor liability claims, they asserted a counterclaim for a declaratory judgment, "seek[ing] a declaration that [they are] not liable to the Plaintiffs under any theory of successor liability."  (*Id.* ¶ 143.)  They also asserted crossclaims against Sichuan Pepper, Inc. and Mr. Shieh for contractual and common law indemnification, and for breach of the covenant of good faith and fair dealing.  (*Id.* ¶¶ 144-157.)  Finally, they pled a claim "in the alternative" against Sichuan Pepper, Inc., seeking rescission of the contract for the sale of the restaurant.  (*Id.* ¶¶ 158-161.)

The Defendants did not answer the crossclaims, and the Clerk of the Court entered a default against them under Fed. R. Civ. P. 55(a).  (ECF No. 80.)  The Tian Parties then moved for a default judgment under Fed. R. Civ. P. 55(b).  (ECF No. 85.)  In support of their motion, they filed a two-page declaration from Mr. Cheng, stating that he created Tian LLC for the purpose of purchasing the assets of Sichuan Pepper, Inc.; that, during the negotiations over the asset purchase, he "had no reason to believe of [sic] any violations of any laws or regulations" and that "this lawsuit"

10

therefore "came as a surprise;" and that the Defendants have not indemnified him.  (ECF No. 85-2.)  Although the Tian Parties purchased the restaurant for only $45,000 (*see* Contract for Sale of Business, ECF No. 85-3), Mr. Cheng claimed that they sustained $175,000 in damages, without further explanation.  (Decl. of T. Cheng, ECF No. 85-2, at 2.)  The Tian Parties sought a default judgment ordering Sichuan Pepper Inc. and Mr. Shieh to pay that sum as damages, and to pay their attorneys' fees in the amount of $13,858.  (*Id.*)  They also sought an order declaring "that the sale agreement between Tian LLC, Sichuan Pepper Inc., and Michael [sic] Shieh is null, void, and rescinded."  (*Id.*)

As she had done with the Plaintiffs' default judgment, Judge Arterton referred the Tian Parties' motion to me.  (ECF No. 94.)  Having carefully considered the parties' submissions, and having given the Defendants a full opportunity to oppose or otherwise respond, I will now address the two motions in order.

## III.  DISCUSSION

### A.    Governing Legal Standards

When a defendant defaults, its liability is ordinarily deemed resolved and the Court proceeds to the question of damages.  "[A] party's default is deemed to constitute a concession of all well pleaded allegations of liability[.]" *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992).  "A default also effectively constitutes an admission that damages were proximately caused by the defaulting party's conduct; that is, the acts pleaded in a complaint violated the laws upon which a claim is based and caused injuries as alleged." *Santillan v. Henao*, 822 F. Supp. 2d 284, 290 (E.D.N.Y. 2011) (citing *Greyhound Exhibitgroup*, 973 F.2d at 159).  A default is not, however, "considered an admission" of the amount of the plaintiff's damages.  *Greyhound Exhibitgroup*, 973 F.2d at 158 (citing *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974) and Fed. R. Civ. P. 8(d)).  Instead, damages are calculated in subsequent

proceedings.  *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro. Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012).

District courts have discretion in choosing a procedure for quantifying the damages, provided that the chosen procedure is sufficient to ensure that the award has an evidentiary basis, and further provided that the defendant is given a chance to oppose the plaintiff's claims. "Generally, 'damages, which are neither susceptible of mathematical computation nor liquidated as of the default, usually must be established by the plaintiff in an evidentiary proceeding.'" *Andrade v. Kwon*, No. 3:08-cv-479 (SRU), 2012 WL 3059616, at *3 (D. Conn. Mar. 26, 2012) (quoting *Greyhound Exhibitgroup*, 973 F.2d at 158).  "A court may forgo an evidentiary hearing," however, if it otherwise "'ensures that there is a basis for the damages specified.'"  *Id.* (quoting *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)) (brackets omitted).  It may, for example, "rel[y] upon detailed affidavits and documentary evidence" when the damages are "capable of mathematical calculation."  *See Fustok*, 873 F.2d at 40.  In any event, "[t]he court has the discretion to require an evidentiary hearing or to rely on detailed affidavits or documentary evidence in making this determination."  *Santillan,* 822 F. Supp. 2d. at 290.

### B.    The Plaintiffs' Claims Against the Defendants

The Plaintiffs contend that they are entitled to a default judgment awarding them unpaid wages, liquidated damages and attorneys' fees under either the FLSA or the CMWA.  (*See* Decl. of Z. Wei, ECF No. 91-1, ¶¶ 32-33; Decl. of F. Zhong, ECF No. 91-2, ¶¶ 26-27; Decl. of J. Zhu, ECF No. 91-3, ¶¶ 28-29; Decl. of F. Meng, ECF No. 91-4, ¶¶ 25-26.)  Because the two statutes treat some issues differently (*see* discussion, Section III.B.2 *infra*), I will begin by considering whether the Plaintiffs may recover under the FLSA on the current record.  I will then address the

amount of unpaid wages that should be awarded, along with the Plaintiffs' entitlement to liquidated damages and prejudgment interest.  Finally, I will address their claims for attorneys' fees and costs.

### 1.     *Applicability of the FLSA – interstate commerce*

To recover under the FLSA – but not under the CMWA – a plaintiff must show that his employment is sufficiently connected to interstate commerce.  "The FLSA's minimum wage and overtime provisions apply to an employee who is: (1) 'engaged in commerce or in the production of goods for commerce'; or (2) 'employed in an enterprise engaged in the production of goods for commerce." *Morales v. Gourmet Heaven, Inc.*, No. 3:14-cv-01333 (VLB), 2016 WL 8254353, at *4 (D. Conn. Nov. 29, 2016) (quoting 29 U.S.C. § 207(a)(1)).  "The two categories are commonly referred to as 'individual' and 'enterprise' coverage, respectively." *Jacobs v. N.Y. Foundling Hosp.*, 577 F.3d 93, 96 (2d Cir. 2009).  A business is subject to "enterprise" coverage under the FLSA when it "(i) has employees engaged in commerce or in the production of goods for commerce, or that has employees *handling, selling or otherwise working on* goods or materials that have been *moved in or produced for commerce* by any person'; and (ii) has 'annual gross volume of sales made or business done . . . not less than $500,000.'" *Morales*, 2016 WL 8254353, at *4 (quoting 29 U.S.C. § 203(s)(1)(A)) (emphasis in original).  "A plaintiff bears the burden of proving either individual or enterprise coverage." *Id.* (citing *Rocha v. Bakhter Afghan Halal Kababs, Inc.*, 44 F. Supp. 3d 337, 343-44 (E.D.N.Y. 2014)).

In this case, the record is sparse with respect to the interstate commerce element.  The Plaintiffs' initial complaint alleged only that Sichuan Pepper Inc. "is a business engaged in interstate commerce that has gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year" and "purchased and handled goods [that] moved in interstate commerce," without any additional supporting detail.  (ECF No. 1, ¶¶ 12-13.)  While the Defendants were still actively

litigating, they filed an answer denying those two allegations.[2]  (ECF No. 14, ¶¶ 12-13.)  When the Plaintiffs later amended their complaint, they did not add any detail to their interstate commerce allegations.  (ECF No. 54, ¶¶ 15-16.)  And the declarations that they ultimately filed in support of their default judgment claims do not contain any additional detail either.  (ECF Nos. 91-1, 91-2, 91-3, 91-4.)

Courts have nonetheless held the FLSA to be applicable in default judgment cases with similar records.  In *Acosta v. DRF Hospitality Management, LLC*, for example, the court held that the FLSA applied because the plaintiff had "allege[d] that at all relevant times," the defendant "had employees engaged in commerce or in the production of goods for commerce and had annual gross revenues of at least $500,000."  No. CV-18-346 (DRH) (AKT), 2019 WL 1590931, at *9 (E.D.N.Y. Mar. 13, 2019).  In that court's view, the two allegations "sufficiently pleaded that [the defendant] is subject to the FLSA."  *Id.*  Similarly, in *Fermin v. Las Delicias Peruanas Restaurant, Inc.*, the court concluded that the FLSA applied even though the "Plaintiffs' Complaint restate[d] the statutory definition without providing any additional facts."  93 F. Supp. 3d 19, 33 (E.D.N.Y. 2015).  Treating the plaintiffs' gross revenue allegations as established by the defendant's default, the court "infer[red] that the myriad goods necessary to operate a Peruvian restaurant with an eat-in dining area and over $500,000.00 in annual sales do not exclusively come from" one state.  *Id.*  "As a restaurant, it is reasonable to infer that Las Delicias requires a wide variety of materials to operate . . . . [and it] is also reasonable to infer that some of those materials moved or were produced in interstate commerce."  *Id.*; *accord Newman v. West Bar & Lounge*, No. 20-cv-1141 (KAM) (RER), 2021 WL 2401176, at *5 (E.D.N.Y. June 11, 2021); *Klimchak v. Cardrona*, No.

---

[2]    Notably, however, they also asserted as an affirmative defense that the Plaintiffs' CMWA claims were preempted by the FLSA.  (ECF No. 14, at 11.)

09-cv-4311, 2014 WL 3778964, at *5 (E.D.N.Y. July 31, 2014) ("[S]everal courts in this district have inferred FLSA enterprise coverage based on the nature of the defendant employer's business, notwithstanding similar pleading deficiencies."); *but see Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 85-86 (E.D.N.Y. 2012) (disapproving of "inferring an interstate commerce nexus from nothing more than [a] general description of an employer's business"). Because the Plaintiffs in this case have alleged that Sichuan Pepper Inc. had more than $500,000 in gross revenues (Am. Compl., ECF No. 54, ¶ 15); and because they have also alleged that Sichuan Pepper Inc. "purchased and handled goods [that] moved in interstate commerce" (*id.* ¶ 16); and because other courts have inferred enterprise coverage in similar circumstances, I conclude that the FLSA applies here.

### 2.    *The Plaintiffs' claims for unpaid wages*

Subject to certain exceptions not relevant here, both the FLSA and the CMWA require employers to pay their employees a minimum wage. "Section 206 of the FLSA sets forth a minimum hourly wage employers must pay their employees who engage in work affecting interstate commerce." *Santillan*, 822 F. Supp. 2d at 291 (citing 29 U.S.C. § 206(a)(1)(C)). At all times relevant to this case, the federal minimum wage was $7.25 per hour. 29 U.S.C. § 206(a)(1)(C). The CMWA likewise requires employers to pay a minimum wage, *see Scott v. Aetna Servs., Inc.*, 210 F.R.D. 261, 263 n.2 (D. Conn. 2002) (observing that the CMWA "provides wage . . . guarantees similar to the FLSA"), but Connecticut's minimum is higher than the federal minimum. The state minimum wage was $9.60 per hour in 2016, rising to $10.10 per hour effective January 1, 2017. Conn. Dep't of Labor, *History of Minimum Wage Rates*, https://www.ctdol.state.ct.us/wgwkstnd/wage-hour/history.htm (last visited Jan. 14, 2022).

Both statutes also require employers to pay time and a half for overtime. Section 207 of the FLSA "specifies that an employer must pay employees who work in excess of forty hours

during a workweek for the excess hours 'at a rate not less than one and one-half times the regular rate at which he is employed.'"  *Santillan*, 822 F. Supp. 2d at 291 (quoting 29 U.S.C. § 207(a)(1)). The CMWA's overtime provision is similar.  *See* Conn. Gen. Stat. § 31-76c ("No employer, except as otherwise provided herein, shall employ any of his employees for a workweek longer than forty hours, unless such employee receives remuneration for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."); *Morales*, 2016 WL 8254353, at *5 ("Like the FLSA, the [CMWA] overtime provision requires that employers pay employees one and one-half times the . . . regular rate for any hours over forty hours per week.").  Under both statutes, "an employer must pay the employee one and one-half times his regular wage for every hour worked in excess of forty, not just one and one-half times the minimum wage."  *Morales v. Cancun Charlie's Rest.*, No. 3:07-cv-1836 (CFD), 2010 WL 7865081, at *7 (D. Conn. Nov. 23, 2010) ("*Cancun Charlie's*").

Plaintiffs bear the burden of proving that they were not paid in accordance with the statute, but in meeting this burden, the law makes allowances for the practical realities of the employment relationship.  While the plaintiff must show "that he performed work for which he was not properly compensated," "[t]he remedial nature of this statute and the great public policy which it embodies . . . militate against making that burden an impossible hurdle for the employee."  *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946), *superseded on other grounds by* The Portal-to-Portal Act of 1947, 29 U.S.C. §§ 251 *et seq.*  "Due regard must be given to the fact that it is the employer who has the duty under . . . the Act to keep proper records of wages [and] hours," and courts should likewise note that "employees seldom keep . . . [records of hours worked] themselves," and "even if they do, the records may be and frequently are untrustworthy."  *Id.* "Therefore, the easiest way for an FLSA plaintiff to discharge his or her burden of proof is,

generally, to 'secure the production of such records' from the employer, who has the duty for their maintenance under" the statute. *Santillan*, 822 F. Supp. 2d at 294 (quoting *Anderson*, 328 U.S. at 687) (brackets omitted). When the defendant fails to produce the records in discovery, thereby frustrating this "easiest" of methods, courts often permit plaintiffs to meet their burden "by relying on recollection alone." *Arasimowicz v. All Panel Sys., LLC*, 948 F. Supp. 2d 211, 224 (D. Conn. 2013) ("An employee's burden to produce 'sufficient evidence' is low and can be met by that employee's 'recollection alone.'"); *see also Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 336 (S.D.N.Y. 2005). And "[i]n the absence of rebuttal by the defendants, or where the employer has defaulted . . . the employees' recollection and estimate of hours worked are presumed to be correct." *Jemine v. Davis*, 901 F. Supp. 2d 365, 376 (E.D.N.Y. 2012) (citations omitted).

Under the overtime provisions of the two statutes, determining whether the Plaintiffs were "properly compensated" requires calculation of their "regular rate" of pay. *See* 29 U.S.C. § 207(a)(1); Conn. Gen. Stat. § 31-76c; *Kinkead v. Humana at Home, Inc.*, 450 F. Supp. 3d 162, 178 (D. Conn. 2020) ("In order to calculate any overtime wages owed, [the Court] must first determine the 'regular rate' received by plaintiffs."). "Where an employee earns a fixed salary, 'the regular hourly rate of pay, on which time and a half must be paid, is computed by dividing the salary by the number of hours which the salary is intended to compensate.'" *Ge Chun Wen v. Hair Party 24 Hours Inc.*, No. 15-cv-10186 (ER) (DF), 2021 WL 3375615, at *10 (S.D.N.Y. May 17, 2021) (quoting 29 C.F.R. § 778.113(a)). When the employee is paid on a monthly basis, his regular rate is nevertheless expressed in hourly terms by multiplying his monthly salary by the twelve months of the year to reach an annual figure; dividing that figure by fifty-two to reach a weekly sum; and then dividing the weekly amount by the relevant number of hours in each week. *See* 29 C.F.R. § 778.113; *Gao v. Jian Song Shi*, No. 18-cv-2708 (ARR) (LB), 2021 WL 1949275, at *11 (E.D.N.Y.

Apr. 30, 2021) (determining regular hourly rate of a restaurant employee paid a monthly salary); *see also Kinkead*, 450 F. Supp. 3d at 182 (observing that the "regular rate . . . is calculated under the CMWA the same as it is under the FLSA").

In determining "the number of hours which [a] salary is intended to compensate," courts often presume a figure of forty hours per week. *Estanislau*, 316 F. Supp. 2d at 108; *Giles v. City of N.Y.*, 41 F. Supp. 2d 308, 317 (S.D.N.Y. 1999). The presumption may be rebutted "with evidence that the employer and employee had an agreement that the employee's weekly compensation would cover a different number of hours." *Jiao v. Shi Ya Chen*, No. 03-Civ.-0165 (DF), 2007 WL 4944767, at *13 (S.D.N.Y. Mar. 30, 2007) (citing *Giles*, 41 F. Supp. 2d at 317). When a defendant defaults – and, therefore, presents no evidence of such an agreement – some courts have applied the presumption without much additional discussion, and have gone on to calculate the plaintiff's regular rate simply by dividing his weekly salary by forty. *E.g., Newman*, 2021 WL 2401176, at *10 ("Defendants failed to rebut the 40-hour weekly presumption by their default."); *De la Cruz v. Trejo Liquors, Inc.*, No. 16-cv-4382 (VSB) (DF), 2019 WL 9573763, at *5 (S.D.N.Y. Sept. 10, 2019) (observing, in the context of a default judgment, that "[a]bsent evidence that the employer and employee understood that the fixed weekly salary included overtime hours, a court will find that the weekly salary covered only the first 40 hours"); *Rosendo v. Everbrighten, Inc.*, No. 13-cv-7256-JGK-FM, 2015 WL 1600057, at *3 (S.D.N.Y. Apr. 7, 2015) ("[W]hen an employer has defaulted and offers no rebuttal, the Court calculates the employee's regular hourly rate by dividing his weekly salary by forty hours."); *see also Gao*, 2021 WL 1949275, at *12 ("In cases of default, this presumption is unlikely to be rebutted.").

Other courts have declined to apply the presumption when the plaintiff worked the same number of hours each week. In determining damages "[i]n the absence of any written instrument

memorializing the parties' intentions," the court's task is to "infer the terms of their agreement from the entire course of their conduct, based on the testimonial and documentary evidence in the record." *Moon v. Kwon*, 248 F. Supp. 2d 201, 206 (S.D.N.Y. 2002).  And where the plaintiff worked the same schedule every week, courts have inferred an agreement that the weekly compensation would cover all of those hours.  In *Chopen v. Olive Vine, Inc.*, for example, the court computed the plaintiff's regular rate based on a seventy-two-hour workweek – not a forty-hour week – because "throughout his employment, plaintiff worked the same number of hours each week."  No. CV2012-2269 (NGG) (MDG), 2015 WL 1514390, at *6 (E.D.N.Y. Mar. 13, 2015). Similarly, in *Man Wei Shiu v. New Peking Taste, Inc.*, the court divided the plaintiff's weekly pay of $270 not by forty, but rather by sixty-seven, because he "testified that, at the time of the hearing," he understood that his "regular schedule consisted of a 67-hour workweek."  No. 11-cv-1175 (NGG) (RLM), 2014 WL 652355, at *12 n.14 (E.D.N.Y. Feb. 19, 2014).  Although the defendant had defaulted, the court rejected the argument that the plaintiff's regular rate should be calculated by dividing his weekly salary by forty, because 29 C.F.R. § 779.113 instructs that the relevant figure is "the number of hours which the salary *is intended to compensate*." *Id.* (emphasis in original).

In *Fuk Lin Pau v. Jian Le Chen*, this court used the plaintiff's actual hours worked – rather than a default figure of forty hours – as the denominator in the "regular rate" calculation.  No. 3:14-cv-841 (JBA), 2015 WL 6386508, at *6-7 (Oct. 21, 2015).  In that case, the plaintiff received a $2,200 monthly salary and worked 80.5 hours per week.  *Id.* at *5-7.  There was no mention of any explicit agreement that the salary would cover all 80.5 hours, but there was evidence that the plaintiff worked substantially the same number of hours each week.  *Id.* at *4-5.  The court began its regular rate calculation by translating the plaintiff's $2,200 monthly salary into a weekly wage

of $507.69.  *Id.* at *7.  It then divided that weekly wage by "the number of hours which the salary is intended to compensate" – which, it concluded, was 80.5 rather than forty hours.  *Id.* at *7 (quoting 29 C.F.R. § 778.113).  This yielded a regular rate of $6.31 per hour, which was below the then-applicable state and federal minimum wages.  *Id.* at *7.  The court then calculated damages based on the minimum wage for each of the first forty hours each week, and 1.5 times the minimum wage for each of the 40.5 overtime hours, rather than according to the method that would have followed from a forty-hour presumption.  *Id.* at *9.

In this case, the amounts that the Plaintiffs seek are based on a regular rate calculation that, in turn, is based on the presumption that their monthly salaries were intended to compensate only the first forty hours of each week.  Mr. Wei, for example, calculated his regular rate for the period May 13, 2016, to December 31, 2016 – in which he was paid a $2,700 monthly salary – at $15.58, which is the figure that results if one multiplies $2,700 by twelve, then divides by fifty-two, and then divides again by forty.  (ECF No. 91-5, at 1.)  Mr. Zhong performed a methodologically similar calculation to reach a regular rate of $17.31.  (*Id.* at 2.)  Mr. Zhu used the same method to reach a figure of $12.69 for the months in which he was paid $2,200; $13.27 for the months in which he was paid $2,300; and $13.85 for the months in which he received $2,400.  (*Id.* at 3.)  And Mr. Meng employed the same method in reaching his figure of $13.27.  (*Id.* at 4.)

All four Plaintiffs also used the same technique for extrapolating this regular rate calculation into a total damage claim.  (*Id.* at 1-4.)  Using a forty-hour workweek to calculate the regular rate had the effect of dropping each Plaintiff's minimum wage claim to zero, since the result of that calculation exceeded both the state and federal minimum wages at all relevant times.  (*See id.*)  But they calculated their overtime claims by multiplying the number of hours worked each week in excess of forty – that is, 26.16 for Messrs. Wei, Zhong and Zhu, and 26.83 for Mr.

Meng – by an overtime rate of 1.5 times their asserted regular rate.  The result was gross overtime claims of $74,946.24 for Mr. Wei; $42,980.74 for Mr. Zhong; $21,936.67 for Mr. Zhu; and $7,781.44 for Mr. Meng.  (*Id.*)

I do not recommend using the forty-hour presumption in this case.  Instead, I recommend that each Plaintiff's regular rate be calculated as if their monthly salary was in contemplation of all hours worked – 66.16 hours per week in the cases of Messrs. Wei, Zhong and Zhu, and 66.83 hours per week in the case of Mr. Meng.  Like the plaintiff in *Chopen*, these Plaintiffs "worked the same number of hours each week," and "[u]nder these circumstances, it is reasonable to infer that the parties intended for plaintiff's weekly salary to include straight time pay for each hour worked."  *Chopen*, 2015 WL 1514390, at *6.  And like the plaintiff in *Man Wei Shiu*, these Plaintiffs all seem to have understood that their "regular schedule consisted of" a workweek exceeding forty hours.  2014 WL 652355, at *12 n.14.  Mr. Wei says that he began working a 66.16-hour workweek immediately upon being hired, and that he worked exactly the same number of hours every week that he was employed.  (ECF No. 91-1, ¶¶ 10-12; *see also* ECF No. 91-5, at 1 (summary exhibit showing 66.16 hours worked for each week from May 13, 2016 to June 30, 2018).)  Messrs. Zhong and Zhu say the same.  (ECF Nos. 91-2, ¶¶ 10-11 (Zhong); 91-3, ¶¶ 10-11 (Zhu); *see also* ECF No. 91-5, at 2-3.)  Mr. Meng also says that he began working the same regular schedule immediately upon being hired, except that he worked 66.83 hours each week rather than 66.16.  (ECF No. 91-4, ¶¶ 10-11; *see also* ECF No. 91-5, at 5.)

I note that this is not the first time that Plaintiffs' counsel has pled a minimum wage violation, only to change the method of calculation upon the defendant's default.  In *Ge Chun Wen*, a plaintiff represented by the same counsel initially pled violations of the minimum wage laws as well as the overtime laws.  2021 WL 3375615, at *1.  Once the defendant defaulted, however, he

"abandon[ed]" that claim and "took the position that his base hourly rate of pay should be calculated based on an assumption that his flat weekly pay was intended to cover only the first 40 hours that he worked in a given week." *Id.* at *5.  His new position had the effect of dropping his minimum wage claim to zero, but adding tens of thousands of dollars to his overtime claims.  *See id.*  The court noted the inconsistency and requested clarification, and in response the plaintiff submitted a supplemental affidavit stating under penalty of perjury that he "did not understand [his] salary to be compensating [him] for any hours in excess of forty (40) each week."  (Aff. of Ge Chun Wen, ECF No. 68-1, ¶ 15, *Ge Chun Wen v. Hair Party 24 Hrs. Inc.*, No. 15-cv-10186-ER-DCF (S.D.N.Y. Feb. 11, 2021).)  With this statement in the record, and with no opposition from the defaulting defendants, the court calculated damages based on a "presum[ption] that Plaintiff's weekly salary covered only the first 40 hours of his work."  *Ge Chun Wen*, 2021 WL 3375615, at *16 (citing, *inter alia*, *Amaya v. Superior Tile & Granite Corp.*, No. 10-Civ.-4525 (PGG), 2012 WL 130425, at *9 (S.D.N.Y. Jan. 17, 2012)).

Such a statement is conspicuously absent from this case.  The Plaintiffs say that they were "not informed of [their] hourly rate;" "not paid overtime pay for all the overtime hours [they] worked for the Defendants;" and  were "not compensated at least at one-and-one-half [their] promised hourly wage"[3] (ECF Nos. 91-1, ¶¶ 22-23, 30 (Wei); 91-2, ¶¶ 17-18, 24 (Zhong); 91-3, ¶¶ 19-20, 26 (Zhu); 91-4, ¶¶ 17-18, 23), but they do not say that they understood their monthly salaries to be compensating them only for the first forty hours each week.  And this omission takes on added significance when one considers that their counsel had the above exchange with the *Ge Chun Wen* court only weeks before.

---

[3]      The third of these statements is, of course, inconsistent with the first.  On the one hand, the Plaintiffs say that they were not informed of their hourly rate, but on the other hand, they say they were not paid 1.5 times their "promised hourly wage" for overtime.

Of course, it is ordinarily a defendant's job to show an "explicit agreement" to include overtime in a flat salary, not the plaintiff's job to negate one. *See, e.g., Amaya*, 2012 WL 130425, at *9. As noted above, however, the court's task is to "infer the terms of [the parties'] agreement from the entire course of their conduct, based on the testimonial and documentary evidence in the record," *Moon*, 248 F. Supp. 2d at 206, and it may not "just accept plaintiff's statement of the damages." *Hosking v. New World Mortg., Inc.*, 570 F. App'x 28, 32 (2d Cir. 2014) (summary order) (quoting *Transatl. Marine Claims Agency v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997)) (brackets omitted). In this case, the Plaintiffs twice pled a minimum wage violation. (Compl., ECF No. 1, ¶¶ 72-82; Am. Compl., ECF No. 54, ¶¶ 83-94.) Moreover, they did so after ten hours' worth of consultations with their attorneys, and after their attorney's in-house accountant spent nearly seven hours analyzing and summarizing their damage claims. (ECF No. 91-6) (legal bill showing .3 hour telephone conference and 2.2 hour in-person conference with each plaintiff prior to initial complaint, and 6.7 hours of pre-complaint work by accountant Maggie Huang). Each Plaintiff accepted a flat salary and then immediately began working a schedule of more than forty hours per week, a schedule that did not change at any point over the course of his employment. Considering all of the attendant circumstances, I would not apply the *Estanislau* presumption, but would instead infer that the Plaintiffs' fixed salaries were intended to compensate all hours worked.

### a.    Application to Mr. Meng

Calculating the Plaintiffs' unpaid wages as if their monthly salary contemplated all hours worked – rather than only the first forty hours of each week – results in the following figures. Using Mr. Meng's case as a platform for explaining the method of recalculation – because his

salary did not change over the course of his employment, making the math of his case the simplest – I begin by translating his monthly salary into its weekly equivalent:

$$(\$2,300 \times 12)/52 = \$530.77/\text{week}$$

I then divide that weekly salary by the total number of hours worked each week – not by forty – to arrive at his regular rate:

$$\$530.77/66.83 = \$7.94/\text{hour}$$

A regular rate of $7.94 per hour is above the federal straight-time minimum wage of $7.25 per hour, but below the Connecticut minimum wage of $10.10 for straight time and $15.15 for overtime.  Mr. Meng is therefore entitled under the CMWA for unpaid minimum wages of $2.16 per hour (that is, $10.10 minus $7.94) for each of the forty straight time hours per week, and $7.21 ($15.15 minus $7.94) for each of his 26.83 overtime hours.  Because he worked 14.57 weeks, the resulting minimum wage calculation is:

$$\$2.16/\text{hour} \times 40 \text{ hours} \times 14.57 \text{ weeks} = \$1,258.85$$

And the resulting overtime calculation is:

$$\$7.21 \times 26.83 \text{ hours} \times 14.57 \text{ weeks} = \$2,818.48$$

Adding the minimum wage and overtime figures produces a sum of $4,077.33.  I therefore recommend that the judgment that enters in Mr. Meng's favor include unpaid wages in the amount of **$4,077.33**.

### b.    Application to Mr. Zhu

Unlike Mr. Meng's salary, Mr. Zhu's salary changed over time.  A separate calculation is therefore required for each of his different salary levels.  Applying the same recalculation method to each of those salary levels results in an unpaid wage figure of **$11,489.14**, using the salaries and employment periods referenced in his declaration (ECF No. 91-3), and using the then-applicable

minimum wages of $10.10 per hour and $15.15 per hour for straight time and overtime, respectively:

| A<br>Work Period | B<br>Total Hours Per Week | C<br>Monthly Pay | D<br>Weekly Pay | E<br>Regular Rate | F<br>Straight Time Shortfall Per Hr.<br>($10.10 – E) | G<br>Overtime Shortfall Per Hr.<br>($15.15 – E) | H<br>No. of Weeks in Period | I<br>Total Wage Shortfall:<br>((F x 40) + (G x (B – 40))<br>x H |
|---|---|---|---|---|---|---|---|---|
| 9/5/2017 – 1/31/2018 | 66.16 | $2,200 | $507.69 | $7.67/hr. | $2.43/hr. | $7.48/hr. | 21.00 | $6,150.48 |
| 2/1/2018 – 2/28/2018 | 66.16 | $2,300 | $530.77 | $8.02/hr. | $2.08/hr. | $7.13/hr. | 3.86 | $1,041.12 |
| 3/1/2018 – 7/1/2018 | 66.16 | $2,400 | $553.85 | $8.37/hr. | $1.73/hr. | $6.78/hr. | 17.43 | $4,297.54 |
| | | | | | | | Total: | **$11,489.14** |

I recommend that the judgment that enters in Mr. Zhu's favor include unpaid wages in the amount of **$11,489.14**.

### c.      Application to Mr. Zhong

Mr. Zhong was more highly paid than Messrs. Meng and Zhu, and under the foregoing method of calculation his regular rate was never lower than the applicable federal or state minimum wage for straight time. It was lower than the Connecticut minimum wage for overtime hours, however, and based on the salaries and work periods referenced in his declaration (ECF No. 91-2) he is therefore entitled to recover **$4,592.29** under the overtime provisions of the CMWA as follows:

| A<br>Work Period | B<br>Total Hours Per Week | C<br>Monthly Pay | D<br>Weekly Pay | E<br>Regular Rate | F<br>Straight Time Shortfall Per Hr.<br>($10.10 – E) | G<br>Overtime Shortfall Per Hr.<br>($15.15 – E) | H<br>No. of Weeks in Period | I<br>Total Wage Shortfall:<br>((F x 40) + (G x (B – 40))<br>x H |
|---|---|---|---|---|---|---|---|---|
| 10/9/2017 – 6/28/2018 | 66.16 | $3,000 | $692.31 | $10.46/hr. | $0.00/hr. | $4.69/hr. | 37.43 | $4,592.30 |
| | | | | | | | Total: | **$4,592.29**[4] |

---

[4]      The Plaintiffs' summary exhibit contains two "work periods" for Mr. Zhong, but they overlap. (ECF No. 91-5, at 2.) The first period is from October 9, 2017 to July 1, 2018, and the second is from January 1, 2018 to June 28, 2018. (*Id.*) This of course double-counts the latter

I recommend that the judgment that enters in Mr. Zhong's favor include unpaid wages in the amount of **$4,592.29**.

### d.     Application to Mr. Wei

Mr. Wei's case presents an additional complication because some of his unpaid wage claims potentially implicate the statute of limitations.  Under the FLSA, actions to recover unpaid wages ordinarily "may be commenced" only "within two years after the cause of action accrued." 29 U.S.C. § 255(a); *see also* 29 C.F.R. § 790.21(b) ("[A] cause of action under the [FLSA] for unpaid minimum wages or unpaid overtime compensation 'accrues' when the employer fails to pay the required compensation for any workweek at the regular pay day for the period in which the workweek ends.").  And under the CMWA, "[n]o action for the payment of remuneration for employment payable periodically shall be brought but within two years after the right of action accrues."  Conn. Gen. Stat. § 52-596.  Here, Mr. Wei claims that his wages were wrongfully withheld beginning in May 2016 (*see* ECF No. 91-1, ¶ 16) but he did not serve this lawsuit on the Defendants until April 23, 2019.  (Service Return, ECF No. 8.)

Courts have considered whether wage-and-hour defendants waive statute of limitation defenses by defaulting, and have reached different conclusions.  Generally, "[a] claim that a statute of limitations bars a suit is an affirmative defense, and, as such, it is waived if not raised in the answer to the complaint."  *Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb, Inc.*, 967 F.2d 742, 752 (2d Cir. 1992); *accord Sec. & Exch. Comm'n v. Boock*, 750 F. App'x 61, 62 (2d Cir. 2019) (summary order).  Following this principle, at least one court has held that a defendant waives the

---

period.  The dates of the work period in the above chart are taken from Mr. Zhong's declaration. (ECF No. 91-2, ¶ 10.)

FLSA's statute of limitation when it fails to appear and plead the defense. *Gurung v. Malhotra*, 851 F. Supp. 2d 583, 592 (S.D.N.Y. 2012) ("[T]he defendants failed to appear, and thus did not assert any defenses. Gurung therefore may recover on her FLSA claims, even if they might have been untimely had the Malhotras asserted a timely statute of limitations defense.") Other courts have, "upon motions for default judgment, where no affirmative defenses have been asserted . . . limited plaintiffs' unpaid wage claims under the FLSA to the period of time set forth in [the] FLSA's statute of limitations." *Vinas v. Pullini Subsurface Contractors, Inc.*, No. 11-CV-2765 (FB) (LB), 2012 WL 6641662, at *4 (E.D.N.Y. Oct. 5, 2012) (citing cases).

Here, I recommend allowing Mr. Wei to recover beyond the customary two-year limitation period for two reasons. First, those courts that have limited the plaintiff's recovery to two years have generally done so "where no affirmative defenses have been asserted." *See id.* That is not the case here; the Defendants appeared and asserted a number of affirmative defenses, but chose not to assert the affirmative defense of statute of limitations even though they knew that Mr. Wei's claims went back to 2016. (Ans. & Aff. Defs., ECF No. 14, at 10-11 (asserting ten affirmative defenses, but failing to assert the defense of statute of limitations); Compl., ECF No. 1, ¶¶ 32, 35, 41 (alleging that Mr. Wei was underpaid "[t]hroughout his employment" going back to May 2016)). Second, the FLSA has a three-year statute of limitation for "willful" violations, 29 U.S.C. § 255(a), and defaulting defendants are generally deemed to have admitted any allegations of willfulness. *E.g., Gao*, 2021 WL 1949275, at *9 ("Here, plaintiff's allegations that defendants acted 'knowingly and willfully' . . . and defendants' default both demonstrate willfulness, allowing for a three-year statute of limitations.") (E.D.N.Y. Apr. 30, 2021).

Including those pay periods that pre-date service of his complaint by more than two years, I calculate Mr. Wei's wage shortfall as follows:

| **A**<br>Work Period | **B**<br>Total Hours Per Week | **C**<br>Monthly Pay | **D**<br>Weekly Pay | **E**<br>Regular Rate | **F**<br>Straight Time Shortfall Per Hr.<br>(Min. Wg. – E) | **G**<br>Overtime Shortfall Per Hr.<br>(OT Min. – E) | **H**<br>No. of Weeks in Period | **I**<br>Total Wage Shortfall<br>((F x 40) + (G x (B – 40)) x H |
|---|---|---|---|---|---|---|---|---|
| 5/13/2016 – 12/31/2016 | 66.16 | $2,700 | $623.08 | $9.42/hr | $0.18/hr [5] | $4.98/hr | 33.14 | $4,556.09 |
| 1/1/2017 – 6/30/2017 | 66.16 | $2,800 | $646.15 | $9.77/hr | $0.33/hr | $5.38/hr | 25.71 | $3,957.80 |
| 7/1/2017 – 12/31/2017 | 66.16 | $3,000 | $692.31 | $10.46/hr | $0.00/hr | $4.69/hr | 26.14 | $3,207.12 |
| 1/1/2018 – 1/31/2018 | 66.16 | $3,400 | $784.62 | $11.86/hr | $0.00/hr | $3.29/hr | 4.29 | $369.24 |
| 2/1/2018 – 4/30/2018 | 66.16 | $3,500 | $807.69 | $12.21/hr | $0.00/hr | $2.94/hr | 12.57 | $966.76 |
| 5/1/2018 – 6/30/2018 | 66.16 | $3,800 | $876.92 | $13.25/hr | $0.00/hr | $1.90/hr | 8.57 | $425.93 |
| | | | | | | | Total: | $13,482.94 |

I therefore recommend that the judgment that enters in Mr. Wei's favor include unpaid wages in the amount of **$13,482.94**.

### 3. Liquidated damages

Both the FLSA and the CMWA permit a plaintiff to recover liquidated damages in an amount equal to his unpaid wages. *See* 29 U.S.C. § 216(b); Conn. Gen. Stat. § 31-68(a); Conn. Gen. Stat. § 31-72; *see also Fuk Lin Pau*, 2015 WL 6386508, at *9. Specifically, the FLSA provides in Section 216(b) that "[a]ny employer who violates" the Act's overtime provisions "shall be liable to the employee . . . [for] unpaid overtime compensation . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). The CMWA likewise provides that "if any employee is paid by his or her employer less than the . . . overtime wage to which he or she is entitled," "such employee shall recover, in a civil action . . . twice the full amount of such . . . overtime wage less any amount actually paid to such employee by the employer." Conn. Gen.

---

[5]    In 2016 the state minimum wage was $9.60 per hour. Conn. Dep't of Labor, *History of Minimum Wage Rates*, https://www.ctdol.state.ct.us/wgwkstnd/wage-hour/history.htm (last visited Jan. 14, 2022). The overtime rate was 1.5 times $9.60, or $14.40.

Stat. § 31-68(a)(2); *see also* Conn. Gen. Stat. § 31-72 ("When any employer fails to pay an employee wages in accordance with the provisions of sections 31-71a to 31-71i, inclusive . . . such employee . . . shall recover, in a civil action . . . twice the full amount of such wages.").

Awards of liquidated or double damages are not mandatory under either statute.  Under the FLSA, an employer may avoid such an award if he "shows to the satisfaction of the court that the act or omission giving rise to [the plaintiff's] action was in good faith and he had reasonable grounds for believing that his act or omission was not in violation of" the Act.  29 U.S.C. § 260; *see also Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 142 (2d Cir. 1999).  And the CMWA similarly provides that an employer can escape an award of double damages if "the employer establishes that the employer had a good faith belief that the underpayment of such wages was in compliance with the law."  Conn. Gen. Stat. § 31-68(a)(2); *see also* Conn. Gen. Stat. § 31-72; *Rodriguez v. Kaiaffa, LLC*, No. X03-HHD-CV-17-6088349-S, 2021 WL 4775624, at *9 (Conn. Super. Ct. Sept. 13, 2021).

If the employer seeks to avoid liquidated or double damages, however, it bears the burden to prove its good faith.  Under the FLSA, "[t]he employer bears the burden of proving good faith and reasonableness, but the burden is a difficult one, with double damages being the norm and single damages the exception."  *Herman*, 172 F.3d at 142; *see also Reich v. S. New England Telecomms. Corp.*, 121 F.3d 58, 71 (2d Cir. 1997).  And under the CMWA, it is likewise the employer "who must prove good faith to avoid double damages."  *Morales v. Gourmet Heaven, Inc.*, No. 3:14-cv-01333 (VLB), 2016 WL 6996976, at *12 (D. Conn. Nov. 29, 2016); *accord Rodriguez*, 2021 WL 4775624, at *9-10.  As one court in this district explained, "[a]n amendment, effective October 1, 2015, to Connecticut General Statutes § 31-72, shifted the burden of proving the requisite good faith belief for the purpose of determining whether the employer can avoid

otherwise mandatory double damages, from the plaintiff to the defendant." *Morrison v. Ocean State Jobbers, Inc.*, 180 F. Supp. 3d 190, 196 (D. Conn. 2016).

Because it is the employer's burden to prove good faith – not the employee's burden to prove bad faith – courts often award liquidated or double damages when the employer defaults. In *Tapia v. Mateo*, for example, the court awarded liquidated damages because the employer had not met its burden under 29 U.S.C. § 260 on account of its default. 96 F. Supp. 3d 1, 5 (D. Conn. 2015). And in *Pena v. Super Economic One Way Supermarket Corp.*, the court observed that since the defaulting "Defendants did not respond to the [plaintiff's] motion, there is no showing of good faith and liquidated damages are appropriate." No. 1:20-cv-03060 (MKB) (PK), 2021 WL 4755603, at *11 (E.D.N.Y. Sept. 8, 2021); *see also Pavia v. Around the Clock Grocery, Inc.*, No. 03-cv-6465 ERK, 2005 WL 4655383, at * (E.D.N.Y. Nov. 15, 2005) ("Here, the employers have defaulted and thus have presented no evidence to rebut the presumption in favor of an award of double damages.").

This case provides no reason to depart from these principles. I therefore recommend that Mr. Meng's judgment include liquidated damages of $4,077.33; Mr. Zhu's judgment include liquidated damages of $11,489.14; Mr. Zhong's judgment include liquidated damages of $4,592.29; and Mr. Wei's judgment include liquidated damages of $13,482.94.

### 4. *Pre-judgment interest*

The Plaintiffs also seek an award of pre-judgment interest, but "[i]t is well settled that in an action for violations of the Fair Labor Standards Act prejudgment interest may not be awarded in addition to liquidated damages." *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1064 (2d Cir. 1988). This is because "[l]iquidated damages under the FLSA are not a penalty," but instead "a form of pre-judgment interest, and for that reason a plaintiff who prevails on his FLSA claim and

receives liquidated damages may not also receive an award of interest." *Yu G. Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 261 (S.D.N.Y. 2008); *see also Fitzgerald v. Bondfactor Co., LLC*, No. 15-cv-6796 (CM) (FM), 2016 WL 4939082, at * (S.D.N.Y. Aug. 31, 2016) ("To allow an employee to recover unpaid wages and liquidated damages, with interest, would have the effect of allowing interest on interest.").

The CMWA has no such limitation, however, and indeed courts in this district have awarded prejudgment interest in addition to liquidated damages under that statute.  In *Strauch v. Computer Sciences Corp.*, for example, the court awarded "pre- and post-judgment interest on [the plaintiffs'] Connecticut law claims at 10% per year pursuant to Conn. Gen. Stat. § 37-3a," even though it had also awarded liquidated damages.  No. 3:14-cv-956 (JBA), 2018 WL 5870337, at *5-7 (D. Conn. Nov. 9, 2018) (holding that "opt-in collective members who are also part of the Connecticut Rule 23 class are entitled to liquidated damages under whichever statute provides that individual greater relief") and *7 (holding that the Connecticut class plaintiffs could recover pre-judgment interest as well).  And in *Cabrera v. G.T. Construction*, the court awarded liquidated damages because "the Defendant Gonzalez acted with bad faith," while also "find[ing] that an award of prejudgment interest at the statutory rate of ten percent (10%) is warranted."  No. 3:05-cv-812 (MRK) (WIG), 2006 WL 1272618, at *1 (D. Conn. Mar. 27, 2006), *report and recommendation adopted*, slip op. (D. Conn. Apr. 25, 2006).  I therefore recommend that the Plaintiffs be awarded pre-judgment interest, running from the midpoint of each Plaintiff's term of employment to the date of the judgment.  *Paulus v. LaSala*, 56 Conn. App. 139, 150-51 (1999) (holding that pre-judgment interest under § 37-3a runs from "the time money is wrongfully withheld" "until judgment is rendered"); *Ge Chun Wen*, 2021 WL 3375615, at *19 (calculating

31

interest from the midpoint of plaintiff's employment, to avoid having to perform a separate interest calculation for each week in which wages were wrongfully withheld).

As to the rate of interest, Conn. Gen. Stat. § 37-3a permits but does not require a rate of ten percent.  Because "the primary purpose of § 37-3a . . . is not to punish persons who have detained money owed to others in bad faith but, rather, to compensate parties that have been deprived of the use of their money," *Sosin v. Sosin*, 300 Conn. 205, 230 (2011), "the 10 percent interest rate set forth in § 37-3a is not a fixed rate, but rather the maximum rate of interest that a trial court, in its discretion, can award." *Giantetti v. Maszoros*, 268 Conn. 424, 426 (2004).  Indeed, "[s]imply to choose 10.0% as the interest rate because that is the only number referenced in § 37-3a is not the proper exercise of judicial discretion."  *Weber v. FujiFilm Med. Sys. USA, Inc.*, 933 F. Supp. 2d 285, 304 (D. Conn. 2013), *aff'd in part, rev'd in part and remanded on other grounds sub nom. Weber v. Tada*, 589 F. App'x 563 (2d Cir. 2014) (quoting *Owens, Shine & Nicola, P.C. v. Travelers Cas. & Sur. Co. of Am.*, No. CV-09-5024601-S, 2011 WL 3200296, at *13 (Conn. Super. Ct. June 24, 2011)).  Rather than reflexively apply a rate of ten percent, courts should "'consider all relevant information including evidence relative to the rate of interest available during the relevant period' in determining the rate of interest to award."  *Id.* (quoting *Sears Roebuck & Co. v. Bd. of Tax Review of the Town of W. Hartford*, 241 Conn. 749, 766 (1997)).  In *Weber*, for example, the court awarded pre-judgment interest at a simple annual rate of four percent "[i]n consideration of the economic context" prevailing at the time of the plaintiff's claims, the S & P 500 having grown at an annual rate of 4.24 percent during that period.  *Id.*

I recommend that the Plaintiffs be awarded prejudgment interest at a simple annual rate of ten percent, but I do not do so reflexively.  Rather, I have considered that in a similar interest rate environment only three years ago, the *Strauch* court employed a ten percent rate in a CMWA case

after a jury found that the defendants had withheld wages willfully.  *Strauch*, 2018 WL 5870337, at *7.  In that setting – which also applies here, because defaulting defendants are ordinarily deemed to have admitted allegations of willfulness, *see Castellanos v. Mid Bronx Hous. Mgmt. Corp.*, No. 13-cv-3061 (JGK), 2014 WL 2624759, at *3 (S.D.N.Y. June 10, 2014) – the court concluded that a rate of ten percent was "appropriate to 'compensate the prevailing party for delay in obtaining money that rightfully belongs to him.'"  *Strauch*, 2018 WL 5870337, at *7 (quoting *Brandewiede v. Emery Worldwide*, 890 F. Supp. 79, 83 (D. Conn. 1994)).  I have also considered that other courts in this district have awarded ten percent in wage cases decided in roughly similar economic environments.  *E.g., Blumenschine v. Prof'l Media Grp., LLC*, No. 3:02-cv-2244 (HBF), 2007 WL 988192, at *13 (D. Conn. Mar. 30, 2007); *Cabrera*, 2006 WL 1272618, at *2; *cf. also Lockhart v. NAI Elite, LLC*, No. HHD-CV-18-6098616, 2020 WL 5261242, at *12 (Conn. Super. Ct. Aug. 5, 2020) (awarding twelve percent interest in a wage case pursuant to Conn. Gen. Stat. § 31-72)); *Stevens v. Vito's by the Water, LLC*, No. HHD-CV-15-6062506-S, 2017 WL 6045302, at *6 (Conn. Super. Ct. Nov. 9, 2017) (same).

Taking all of the foregoing calculations together, I calculate the Plaintiffs' total damages and *per diem* interest as follows:

| | **A**<br>Unpaid Wages | **B**<br>Liquidated Damages | **C**<br>Total | **D**<br>Annual Interest (C x .10) | **E**<br>Daily Interest (D/365) |
|---|---|---|---|---|---|
| Wei | $13,482.94 | $13,482.94 | $26,965.88 | $2,696.59 | $7.39 |
| Zhong | $4,592.29 | $4,592.29 | $9,184.58 | $918.46 | $2.52 |
| Zhu | $11,489.14 | $11,489.14 | $22,978.28 | $2,297.83 | $6.30 |
| Meng | $4,077.33 | $4,077.33 | $8,154.66 | $815.46 | $2.23 |

And I calculate the midpoints of their terms of employment as follows:

|  | Beginning Date | Ending Date | Midpoint |
|---|---|---|---|
| Wei | 5/13/2016 | 6/30/2018 | 6/6/2017 |
| Zhong | 10/9/2017 | 6/28/2018 | 2/17/2018 |
| Zhu | 9/5/2017 | 7/1/2018 | 2/1/2018 |
| Meng | 3/20/2018 | 6/30/2018 | 5/10/2018 |

### 5. *Attorneys' fees*

#### a. **Governing legal principles**

Under both the FLSA and the CMWA, successful plaintiffs can recover "reasonable" attorneys' fees. 29 U.S.C. § 216(b); Conn. Gen. Stat. §§ 31-68, 31–72.  In the case of the FLSA, an award of reasonable attorneys' fees is mandatory.  29 U.S.C. § 216(b) ("The court . . . *shall* . . . allow a reasonable attorney's fee. . . .") (emphasis added); *Christianburg Garment Co. v. E.E.O.C.*, 434 U.S. 412, 415 n.5 (1978); *Davis v. Ching Yi Cheng*, No. 16-cv-1354 (ADS) (SIL), 2017 WL 6622545, at *14 (E.D.N.Y. Dec. 28, 2017) ("Section 216(b) makes fees mandatory for prevailing plaintiffs.").  The CMWA provides that a successful plaintiff may recover "such reasonable attorneys' fees as may be allowed by the court."  Conn. Gen. Stat. § 31-68(a).

"As a general matter, the starting point in analyzing whether claimed attorneys' fees are appropriate is the lodestar[.]"  *Yuajian Lin v. La Vie en Schezuan Rest. Corp.*, No. 15-cv-09507 (DF), 2020 WL 1819941, at *2 (S.D.N.Y. Apr. 9, 2020) (citing *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011)) (internal quotation marks omitted).  The "lodestar" is "the product of a reasonable hourly rate and the reasonable number of hours required by the case."  *Millea*, 658 F.3d at 166.  While the Second Circuit has suggested that the term is outdated, *see Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008) ("The meaning of the term 'lodestar' has shifted over time, and its value as a metaphor has deteriorated to the point of unhelpfulness."), it has also held that district courts must calculate the figure.  *Ortiz v. City of N.Y.*, 843 F. App'x 355, 358 (2d Cir. 2021) (summary order) ("We have

34

explained that district courts evaluating a request for attorneys' fees must conduct a lodestar analysis, which calculates reasonable attorneys' fees by multiplying the reasonable hours expended on the action by a reasonable hourly rate, which results in a presumptively reasonable fee.") (internal quotation marks omitted).

In assessing the first factor in the lodestar calculation – the reasonable hourly rate – the Second Circuit has directed district courts to "bear in mind *all* of the case-specific variables that [it] and other courts have identified as relevant to the reasonableness of an attorney's fees." *Arbor Hill*, 522 F.3d at 190 (emphasis in original). "The reasonable hourly rate is the rate a paying client would be willing to pay," and in determining that rate, district courts should consider (among other things) the factors identified in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).[6] *Id.* Courts should also "bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Id.* A reasonable, paying client also "presum[ably] . . . would in most cases hire counsel from within his district, or at least counsel whose rates are consistent with those charged locally." *Id.* Accordingly, [w]hen an attorney's requested hourly rate is higher than the rates found to be reasonable in the relevant market, it is within the Court's discretion to reduce the requested rate." *Yuajian Lin*, 2020 WL 1819941, at *2 (citing *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998)).

---

[6]     The *Johnson* factors are: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to the acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Lilly v. City of N.Y.*, 934 F.3d 222, 228 (2d Cir. 2019).

In analyzing the second lodestar factor – the reasonable number of hours required by the case – courts consider, among other things, the quality of the representation and the complexity of the work.  "In determining whether an excessive amount of time was expended on the matter, the Court may consider, *inter alia*, the nature and quality of the work submitted by counsel in connection with the litigation, and whether the work was complicated or straightforward." *Id.*; *see also Castellanos*, 2014 WL 2624759, at *6 ("In assessing whether the hours worked were reasonable, courts in this district often take into account the straightforward nature of the work performed and the relative simplicity of the issues involved.") (citation and brackets omitted). Courts are "not to compensate counsel for unnecessary hours . . . and in sizing the appropriate reduction, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." *Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 57 (S.D.N.Y. 2015) (citation and internal quotation marks omitted).  In any event, the party seeking fees bears the burden of demonstrating that its request is reasonable, and must provide the Court with enough information to assess its application. *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).

**b.      Application to this case – reasonable rates**

In this case, the Plaintiffs have supported their fee application with three principal documents.  The first is a twenty-five-page declaration from their lead counsel, Attorney John Troy, describing (among other things) his and his colleagues' experience in wage and hour cases and his long history of representing low-income individuals in the Mandarin-speaking immigrant community.  (ECF No. 91.)  The second is a copy of the Troy Law firm's time records, which appear to have been maintained contemporaneously throughout the litigation, and which show the hours that Attorney Troy and his colleagues expended on the case.  (ECF No. 91-6.)  Third and

finally, the Plaintiffs submitted a one-page invoice from their co-counsel at the Conover Law Offices.  (ECF No. 92-1.)

The Plaintiffs seek an award of $600 per hour for Attorney Troy's services.  (ECF No. 91, ¶32.)  Attorney Troy has served as attorney of record in 374 wage and hour cases in district courts across the country, including ten in the District of Connecticut.  (*Id.* ¶¶ 24-27.)  He notes that he was twice awarded $550 per hour, but the next highest award cited in his declaration is $400 per hour.  (*Id.* ¶ 31.)  The Plaintiffs also seek $400 per hour for associate Attorney Aaron Schweitzer (*id.* ¶¶ 33, 41); $150 per hour for paralegal and Mandarin interpreter Tiffany Troy (*id.* ¶¶ 33, 41); $200 per hour for "managing clerk" Preethi Kilaru (*id.* ¶¶ 50, 51, 53); and $150 per hour for Certified Public Accountant Maggie Huang.  (*Id.* ¶¶ 54-58.)  Finally, they seek awards of $550 per hour and $400 per hour, respectively, for work performed by Attorney Conover and his associate, Molly Smithsimon.  (ECF No. 92-1.)

Courts in this circuit have ruled upon the reasonableness of the Troy Law firm's rates on several occasions.  As directed by *Arbor Hill* and *Johnson*, those courts have considered the firm's extensive experience and expertise in wage and hour cases.  *See, e.g., Yuajian Lin*, 2020 WL 1819941, at *3 (acknowledging that Attorney Troy "has specialized in wage and hour cases like this one," and noting the "hundreds of wage-and-hour cases in which he is currently counsel of record").  They have also considered whether "the subject matter and legal questions involved . . . were straightforward, non-complex issues one would anticipate in an [FLSA] litigation."  *Singh v. A & A Market Plaza, Inc.*, No. CV-15-7396 (AKT), 2019 WL 4861882, at *9 (E.D.N.Y. Sept. 30, 2019); *accord Run Guo Zhang v. Lin Kumo Japanese Rest.*, No. 13-Civ. 6667 (PAE), 2015 WL 5122530, at *3 (S.D.N.Y. Aug. 31, 2015) (analyzing whether the firm's "work in this unexceptional case was within the mainstream of legal work in these cases").  In some cases, courts

have commented upon the quality of the work in the course of determining a reasonable rate. *E.g.,* *Ge Chun Wen*, 2021 WL 3375616, at *20-21 (reducing rates because "the Docket of this action reflects numerous filing deficiencies . . . careless assertions, inconsistencies, and obvious errors."). Courts have also observed that the firm's senior attorneys sometimes "performed work that could readily have been performed by a more junior attorney or even a paralegal." *Id.* at 21. And, of course, courts have considered the hourly rates generally charged by other attorneys in the district in similar cases. *E.g., Guo v. Tommy's Sushi*, No. 14-Civ.-3964 (PAE), 2016 WL 452319, at *5 (S.D.N.Y. Feb. 5, 2019) (comparing Troy Law's requested rates against "prevailing rates . . . in employment law cases in this District").

Applying these factors, district courts have generally declined to accept Troy Law's requested rates. In *Yuajian Lin*, for example, the court began by observing that "a reasonable rate for senior attorneys handling wage-and-hour cases, in [the Southern District of New York], typically ranges from $300 to $400 per hour." 2020 WL 1819941, at *3. It then considered "where, within that general range, Troy's rate, in particular, should fall." *Id.* Noting that "the pretrial management of [the] case by Troy Law was uneven at best," it awarded Attorneys Troy and Schweitzer hourly rates of $325 and $125, respectively. *Id.* at *5. The same judge reached the same conclusion less than a year ago in *Ge Chun Wen.* "In light of the poor quality of work that was reflected in many of Troy Law's filings, combined with the fact that Troy did not consistently perform work commensurate with his level of experience," she recommended to the District Judge "that Troy be awarded the reduced rate of $325 per hour" and "that the rate of $125

per hour would be reasonable to compensate Plaintiff for Schweitzer's work." 2021 WL 3375615, at *20-22.[7]

These decisions come from the Southern and Eastern Districts of New York, but the prevailing hourly rates for employment law cases in the District of Connecticut are similar.  In *Lopes v. Brazilian Travel Services, Ltd.*, for example, the court approved a rate of $400 per hour for an experienced FLSA attorney who litigated a default judgment to conclusion in only 13.6 hours.  No. 3:17-cv-820 (WWE), 2017 WL 10311218, at *3 (D. Conn. Sept. 26, 2017).  In *Morales*, the court approved a rate of $350 per hour for an attorney who described himself as "an experienced wage and hour litigator, who specializes in representing low-wage immigrant workers."  (Memo. in Supp. of Mot. for Atty.'s Fees, *Morales v. Gourmet Heaven, Inc.*, ECF No. 108-1, No. 14-cv-01333 (VLB) (D. Conn.); ECF No. 109 (order approving same).)  Similarly, in *Fuk Lin Pau*, the court found the attorney's "requested rate [of $350 per hour] to be in line with fee requests approved by other courts in this District in connection with FLSA cases."  2015 WL 8490907, at *2.  In other cases – albeit less recent ones – courts have approved $300 per hour. *E.g., Tapia*, 96 F. Supp. 3d at 6-7; *Wellington v. Duncan*, No. 3:13-cv-1179 (JBA), slip op. at 3 (D. Conn. July 2, 2014).  Thus, the question here is the same as in *Yuajian Lin* – in a market where hourly rates for senior employment law attorneys "typically range[] from $300 to $400 per hour," "where, within that general range . . . should [Troy Law's rates] fall."  2020 WL 1819941, at *3.

---

[7]     In his declaration, Attorney Troy states that he was awarded a rate of $550 per hour in *Hu v. 226 Wild Ginger, Inc.*, No. 1:17-cv-10161 (S.D.N.Y.) and *Zhang v. Chongqing Liuyishou Gourmet NH Inc.*, No. 2:18-cv-10359 (D.N.J.)  Like the courts in *Ge Chun Wen* and *Yuajian Lin*, I do not find these citations persuasive.  The *Hu* and *Zhang* courts "did not cite to any other cases in which Troy had been awarded that rate," and in *Zhang* "the attorneys in the cases cited by the court were awarded significantly less than $550 per hour."  *Yuajian Lin*, 2020 WL 1819941, at *3. Moreover, even if Attorney Troy had been awarded this rate in another district, "[c]ourts should rely on the prevailing rates *within their district* when determining a reasonable hourly rate."   *Gao*, 2021 WL 1949275, at *17 (emphasis added).

With respect to Attorney Troy himself, I recommend that the Court apply an hourly rate of $375 for several reasons.  First, the principal consideration that caused the *Gen Chun Wen* and *Yuajian Lin* courts to reduce his rates to near the bottom of the range – that is, to $325 – is not present here.  Those courts discounted his rate because his work had been of "poor quality," *Gen Chun Wen*, 2021 WL 3375615, at *22, and "uneven at best."  *Yuajian Lin*, 2020 WL 1819941, at *4.  By contrast, this case was litigated in workmanlike fashion.   While Attorney Troy has advanced some positions that should not be accepted (*see* discussion, Section III.B.2 *supra*), the record contains no obvious, large errors that would justify a $50 per hour reduction in his rate.  *See Suarez-Castaneda v. F & R Cleaning Servs. Corp.*, No. 17-cv-7603 (SJ) (PK), 2019 WL 5694118, at *15 (E.D.N.Y. Mar. 15, 2019) (recommending a rate of $375 per hour for Attorney Troy in a case that, so far as the recommendation discloses, had no instances of "poor quality" work).  On the other hand, he does not merit an award at the very top of the range – that is, $400 per hour – because, as in *Ge Chun Wen*, he did not always "perform work commensurate with his level of experience."  The firm's billing records disclose that he spent 3.6 hours "prepar[ing] and sign[ing] retainer" agreements with his clients, and 4.45 hours researching the Defendants' business filings, property records and website – just to cite a few examples of work that could have been done by a junior associate or paralegal.  (*See* additional discussion, Section III.B.5.c *infra*.)

I recommend a rate of $175 per hour for Attorney Schweitzer.  While the Connecticut cases provide fewer data points on associate rates than on partner rates, the available authorities suggest that $175 per hour is a reasonable rate for an employment law associate with Attorney Schweitzer's experience.  In *Strauch*, an FLSA/CMWA case, the plaintiffs' local counsel firm charged rates "rang[ing] from $125 to $180" for work done by its associates.  2020 WL 4289955, at *5.   And in *Beacon Insurance and Investment Group, LLC v. Panzo*, a dispute over non-competition

agreements, the court approved associate rates of "$225 and $175 . . . considering the experience, education, number of years in practice and skill as associates." No. NNH-CV-14-6044992-S, 2016 WL 4507389, at *16 (Conn. Super. Ct. July 25, 2016). While the *Gen Chun Wen* court noted that Attorney Schweitzer had "generally been awarded an hourly rate of $100 or $150," it did so in view of his then-existing "status as a relatively junior associate." 2021 WL 3375615, at *22. He now has nearly five years of experience, and has appeared in 186 wage and hour cases in courts throughout the Northeast. (ECF No. 91, ¶¶ 33-38.)

I recommend rates of $140 per hour for paralegal Tiffany Troy and "managing clerk" Preethi Kilaru. Courts have found $140 to be an appropriate hourly rate for paralegal work in this district, *see, e.g., Doe v. Darien Bd. of Educ.,* No. 3:11-cv-1581 (JBA), 2015 WL 8770003, at *6 (D. Conn. Dec. 14, 2015), *Crawford v. City of New London*, No. 11-cv-1371 (JBA), 2015 WL 1125491, at * (D. Conn. Mar. 12, 2015), and I see no reason to depart from that rate here. While the *Yuajian Lin* court awarded considerably lower rates to both Ms. Troy and Ms. Kilaru, it did so principally because Ms. Troy's work contained several errors, and because the plaintiffs' fee submission did not sufficiently explain Ms. Kilaru's role at the firm. 2020 WL 1819941, at *6. Neither consideration is present here; there are no obvious errors in Ms. Troy's work in this case, and the Plaintiffs' submissions satisfactorily explain Ms. Kilaru's position at the firm (ECF 91, ¶¶ 50-53) and the work she performed. (ECF No. 91-6.) I recommend a rate of $100 per hour for accountant Maggie Huang, because that is the rate she has been awarded in other cases, and because the Plaintiffs have provided no persuasive reason for awarding a higher rate here. *Yuajian Lin*, 2020 WL 1819941, at *6; *Singh v. Meadow Hill Mobile Inc.*, No. 20-Civ.-3853 (CS) (AEK), 2021 WL 3862665, at *17 (S.D.N.Y. Aug. 9, 2021); *see also Jia Wang Lin v. Ginza 685 Inc.*, No. 18-cv-12202 (AJN), 2021 WL 2138511, at *2 (S.D.N.Y. May 26, 2021) (concluding, in the course

of evaluating the fairness of an FLSA settlement, that a rate of $100 per hour for Ms. Huang's work was reasonable).

Finally, I recommend rates of $300 and $125 for Attorneys Conover and Smithsimon, respectively.   The Plaintiffs have not provided any information about these attorneys' qualifications or experience.  (S*ee* ECF Nos. 91, 92.)  Because fee applicants bear the burden to show "'that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation,'" a failure to provide information about the lawyer's qualifications "could provide a basis to deny plaintiffs' application for an award of attorneys' fees" for that lawyer.  *Disney Enterps., Inc. v. Merchant*, No. 6:05-cv-1489, 2007 WL 1101110, at *8 (N.D.N.Y. Apr. 10, 2007) (quoting *Blum v. Stenson*, 465 U.S. 886, 895-96 n.11 (1984)); *accord Fisher v. Town of Windsor*, No. 3:94-cv-2050 (AHN), 1997 WL 76669, at * 6 (D. Conn. Feb. 7, 1997) (denying request for attorneys' fees in Title VII case because plaintiff failed to provide evidence that requested rates were "fair in light of [the attorneys'] skill and experience").  "Nevertheless, the Court has discretion to consider the fee application if the missing information can be obtained from other sources."  *Suarez-Castaneda*, 2019 WL 5694118, at *15.  Here, a PACER search reveals that Attorney Conover has been appearing in this court for nearly thirty years, and has been appearing in employment law cases for at least ten years.  (*See* Compl. *Ahmad v. Univ. of Bridgeport*, No. 3:12-cv-46 (MPS).)  I therefore conclude that he is an experienced partner-level employment law attorney, but with no other data on his qualifications, I cannot recommend any rate higher than the very bottom of the range for such attorneys.  Attorney Smithsimon has never appeared in this court, and without any other data, I cannot conclude that she merits anything more than the very lowest associate rate.

*See Strauch,* 2020 WL 4289955, at \*5 (noting that rates for associates at plaintiffs' local counsel firm in FLSA/CMWA case ranged from $125 to $180 per hour).

### c.    Application to this case – reasonable hours

Attorney Troy says that his firm expended 132.22 hours on this case.  (ECF No. 91, ¶ 61.) He says that he worked 93.62 of those hours himself, with his associate, Attorney Schweitzer, working only 1.78 hours.  (*Id.*)  Paralegal Tiffany Troy worked 13.36 hours on the matter, and managing clerk Preethi Kilaru put in 16.76 hours.  (*Id.*)  Accountant Maggie Huang worked 6.7 hours.  (*Id.*)  Finally, Attorneys Conover and Smithsimon claim to have expended 6.33 hours and 3.2 hours, respectively, "reviewing and revising the complaint, and assisting with filing the complaint and *pro hac vice* motion."  (ECF No. 92-1.)  Together, the Troy and Conover firms claim to have expended 141.75 hours on the Plaintiffs' claims against the Defendants, claims that will likely resolve by a default judgment.  (*See* ECF Nos. 91, 92-1.)

After carefully reviewing the billing records, I conclude that the Plaintiffs have not met their burden to demonstrate the reasonableness of this figure.  The Troy Law firm's bill contains several facially unreasonable entries, including 1.3 hours for "Create Binder, Set Up/Key in Database;" .33 hours to "Key In Complaint Service Due Date and Expected Date of Return of Service;" 3.6 total hours for "prepar[ing] and sign[ing] retainer with Clients(s);" 2.25 hours for "Defendant Website Research;" and 9.0 hours for printing and mailing notices of pendency to the putative FLSA collective.  (ECF No. 91-6.)  Other courts have regarded similar billing entries from the same firm as unreasonable.  *E.g., Singh*, 2021 WL 3862665, at \*17; *Lu Wan v. YWL USA Inc.*, No. 18-cv-10334 (CS), 2021 WL 1905036, at \*7 (S.D.N.Y. May 12, 2021) (noting "[e]xamples of grossly excessive billing – to the point where fabrication cannot be ruled out"); *Jin v. Shanghai Original, Inc.*, No. 16-cv-5633 (ARR) (JO), 2020 WL 4783399, at \*8 (E.D.N.Y. Aug. 18, 2020)

(adopting magistrate judge's recommendation of an "across-the-board reduction of 40%" of billable hours because "plaintiff's attorneys' billing records frequently are vague and redundant and reflect overstaffing and poor billing judgment").  The reasonableness of the Conover firm's application is similarly unsupported; the Plaintiffs do not explain why it was necessary for their local counsel to spend 9.53 hours reviewing and revising a complaint and filing an unremarkable *pro hac vice* motion, when their principal counsel had already spent many hours drafting and re-drafting the complaint.  (*See* ECF No. 92-1 (Conover firm submission claiming 9.53 hours for "reviewing and revising the complaint, and assisting with filing the complaint and *pro hac vice* motion"); ECF No. 91-6 (Troy Law billing submission, stating that the firm spent 4.5 hours drafting the complaint on April 5, 2019; 1.2 hours meeting with clients to revise the complaint on April 8, 2019; and .9 hours to finalize the complaint on April 9, 2019).)[8]

I also conclude that the Plaintiffs have not met their burden to demonstrate the reasonableness of the distribution of the work between partners, associates and paralegals.  Here as in *Singh*, "[a]s the most experienced attorney with the highest billable rate, John Troy should not have been the one to perform the majority of the work in this matter."  *Singh*, 2021 WL 3862665, at *17.  The firm's billing records in this case reflect Attorney Troy personally performing – that is, not delegating to associates or paralegals – such tasks as preparing retainer

---

[8]     The Conover submission suffers from two additional problems.  First, it does not appear to be a contemporaneous billing record; rather, it appears to be an invoice that the firm prepared over two years after its last activity on the case.  (*Compare* ECF No. 92-1 (invoice dated May 14, 2021) *with* ECF No. 8 (May 1, 2019 docket entry reflecting firm's last activity).)  Billing records submitted in support of a fee application "must be made contemporaneously, which is to say, while the work is being done or, more likely, immediately thereafter.  Descriptions of work recollected in tranquility days or weeks later will not do."  *MBC Ventures, LLC v. Miniventures of N.Y., Inc.*, No. 3:20-cv-00762 (CSH), 2021 WL 3709808, at *12 (D. Conn. Aug. 20, 2021) (citation omitted).  Second. it employs the disfavored technique of "block billing" multiple tasks into a single entry.  *E.S. v. Katonah-Lewisboro Sch. Dist.*, 796 F. Supp. 2d 421, 432 (S.D.N.Y. 2011).

agreements (3.6 total hours); researching the Defendants' website and its reviews on Yelp, Grubhub and the like (3.0 total hours); researching the status of its liquor license (.4 hours); drafting a Rule 26(f) report (1.0 hours); conducting legal research for a "Motion to Compel namelist [sic]" (.75 hours); and drafting deposition notices, interrogatories, document production requests and initial disclosures (7.5 hours). (ECF No. 91-6.) In a "relatively straightforward [wage and hour] case, staffing the case in such a matter warrants an across-the-board adjustment in the number of hours billed." *Singh,* 20201 WL 3862665, at *17 (quoting *Agudelo v. E & D LLC,* No. 12-cv-960 (HB), 2013 WL 1401887, at *2 (S.D.N.Y. Apr. 4, 2013)).

Courts "have applied reductions, often between 15 to 30 percent, to account for issues like vagueness in counsel's time records, and the resulting inability of the Court to assess the reasonableness of counsel's hours." *Ge Chun Wen,* 2021 WL 3375616, at *24 (citing cases applying reductions of up to thirty percent). "Percentage reductions may also be appropriate where it appears, for other reasons, that the time expended by counsel was excessive." *Id.* (citing *Carey,* 711 F.2d at 1142, 1146, for the proposition that "a percentage reduction may be applied as a 'practical means of trimming fat' from a fee application"). Applying these principles, courts have made across-the-board reductions of as much as forty percent to Troy Law's bills. *See, e.g., Lu Wan,* 2021 WL 1905036, at *7; *Jin,* 2020 WL 4783399, at *8.

An across-the-board reduction is in order in this case as well, but not as large as in *Lu Wan* and *Jin.* Some of the most striking examples of facially unreasonable billing entries present in those cases are not present here; for example, in *Jin* but not here, Attorney Troy billed a full hour for the administrative task of filing of the complaint through the CM/ECF system, and billed for time that he spent drafting an amended complaint that he never filed. *Jin,* 2020 WL 4783399, at *8. And while spending 141.75 hours on a case that will resolve by default judgment is certainly

45

unusual, it is clear that many of these hours were necessitated by the Defendants' recalcitrance in discovery.  (*See* ECF No. 91-6, at 4-5) (contemporaneous billings demonstrating Troy Law's efforts to secure Defendants' compliance).  Taking all of these factors into consideration, I recommend that the hours claimed by all of the Troy Law timekeepers except Attorney Schweitzer[9] be reduced by fifteen percent.  And since the Plaintiffs have not supported the reasonableness of spending 9.53 hours reviewing a draft complaint and filing an unremarkable *pro hac vice* motion, I recommend that the Conover firm's hours be reduced by thirty percent.

### d.    Summary of recommendation on attorneys' fees

Multiplying the reasonable rates and reasonable hours derived above, I recommend that the Plaintiffs be awarded attorneys' fees in the amount of **$35,918.40**, broken down as follows:

| Timekeeper | Reasonable Rate | Claimed Hours | Percentage Reduction | Reasonable Hours | Reasonable Fee |
|---|---|---|---|---|---|
| John Troy | $375/hour | 93.62 | 15% | 79.58 | $29,842.50 |
| Aaron Schweitzer | $175/hour | 1.78 | 0% | 1.78 | $311.50 |
| Tiffany Troy | $140/hour | 13.36 | 15% | 11.36 | $1,590.40 |
| Preethi Kilaru | $140/hour | 16.76 | 15% | 14.25 | $1,995.00 |
| Maggie Huang | $100/hour | 6.7 | 15% | 5.7 | $570.00 |
| Bradford Conover | $300/hour | 6.33 | 30% | 4.43 | $1,329.00 |
| Molly Smithsimon | $125/hour | 3.2 | 30% | 2.24 | $280.00 |
|  |  |  |  | **Total:** | **$35,918.40** |

### 6.    Costs

The Plaintiffs also seek awards of costs incurred by both the Troy and Conover firms.  In addition to the lodestar amount, an award of attorneys' fees may include "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998).  "These expenses, or 'costs,' may include photocopying, travel, telephone costs, and postage, as well as filing fees and reasonable process-

---

[9]    Troy Law's billing statement contains only three entries from Attorney Schweitzer totaling 1.78 hours.  (ECF No. 91-6, at 5-6.)  None of these entries appear unreasonable.

server fees." *Yuajian Lin*, 2020 WL 1819941, at *2 (citing *Kuzma v. Internal Revenue Serv.*, 821 F.2d 930, 933-34 (2d Cir. 1987)).  Here, the Plaintiffs seek to recover $298.15 in costs incurred by the Troy firm, composed of $232.00 in service of process costs and $66.15 in postage, copying and the like.  I conclude that these sums are reasonable.[10]  The Plaintiffs also seek to recover $475.00 in costs assertedly incurred by the Conover firm in filing the complaint (ECF No. 92),[11] but the docket reflects that they paid $400, not $475.  (*See* ECF No. 1 (recording receipt of $400 filing fee); *see also* 28 U.S.C. § 1914.)  I therefore recommend that the Plaintiffs' claim for costs be allowed in the amount of $698.15.

### 7.   *The Defendants against whom judgment should enter*

Having recommended that judgment enter in favor of each of the four Plaintiffs, I will now consider whether those judgments should enter against all or fewer than all of the Defendants.  For the following reasons, I recommend that the judgments enter against Mr. Shieh and Ms. Ye as well as the Sichuan Pepper corporation.

---

[10]    Attorney Troy apparently drove from his New York office to Vernon, Connecticut to serve the complaint on the Defendants himself, and the $232.00 charge is for his own mileage and "services."  (*See* Proof of Service, ECF No. 8.)  Although unusual, this does not appear to be improper.  *See* 1 Moore's Fed. Prac., § 4.70 (2020) (citing cases for the proposition that, since Rule 4 permits process to "be served by any person who is not a party . . . [and] a plaintiff's attorney is typically not a party, process may be served by the attorney").  And his $232.00 fee does not appear to be unreasonable in this three-defendant case.  *See, e.g.*, Return of Serv., ECF No. 9, *Collins v. Kohl's Dept. Stores*, No. 3:18-cv-00065 (VAB) (D. Conn.) (service return reflecting Connecticut state marshal's fee of $170.66 to serve a single defendant in a wage-and-hour case).

[11]    Presumably this entry on the Conover submission is a scrivener's error, and the firm meant to say that it spent $400 filing the complaint and $75 filing Attorney Troy's *pro hac vice* application.  (*See* ECF No. 8) (docket entry reflecting that Conover firm paid $75 in conjunction with Attorney Troy's motion for leave to appear *pro hac vice*).  Even if it had expressly requested an award of $75 in costs for the *pro hac vice* motion, however, I would have recommended that the request not be allowed.  I agree with those courts that have held that "costs associated with the filing of *pro hac vice* applications are generally not reimbursable," *e.g., Div. 1181 Amalgamated Transit Union v. D & A Bus Co.*, 270 F. Supp. 3d 593, 629 (E.D.N.Y. 2017), at least in cases like this one that implicate no unusual issues requiring out-of-district expertise.

"To be held liable under the FLSA, a person must be an 'employer,' defined broadly as 'any person acting directly or indirectly in the interest of an employer in relation to an employee.'" *Sikiotis v. Vitesse Worldwide Chauffeured Servs., Inc.*, 145 F. Supp. 3d 39, 45 (D. Conn. 2015) (quoting 29 U.S.C. § 203(d)).   "When determining whether an individual or an entity is an 'employer' under the FLSA, courts evaluate the 'economic reality' of the relationship by focusing on 'whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work scheduled or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* at 45-46 (quoting *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984)).   "No one of the four factors standing alone is dispositive," because "the 'economic reality test encompasses the totality of the circumstances." *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999).   Relatedly, "[t]he lack of one *Carter* factors is not fatal" to a Plaintiff's claim against an individual defendant.   *Fermin*, 93 F. Supp. 3d at 36.   In particular, a defendant may not seek to avoid liability on the ground that he did not "maintain[] employment records" when such records were not kept at all.   *Id.*

The CMWA "employs a somewhat different definition of 'employer' than the FLSA." *Tapia*, 96 F. Supp. 3d at 5.   "The relevant Connecticut statutes define employer as an individual or legal entity who 'employs any person' or who acts in an employer's interest in relation to employees."   *Lin v. W & D Assocs., LLC*, No. 3:14-cv-164 (VAB), 2015 WL 7428528, at *7 (D. Conn. Nov. 20, 2015) (citing Conn. Gen. Stat. §§ 31-58(d), 31-71a(1)) (brackets omitted).   "In fleshing out this definition, the Connecticut Supreme Court has declined to adopt the 'economic reality test' that applies to the FLSA."   *Id.* (citation and quotation marks omitted).   As explained by that court, for purposes of the CMWA, the term "employer" "encompasses an individual who possesses the ultimate authority and control within a corporate employer to set the hours of

48

employment and pay wages and therefore is the specific or exclusive cause of improperly failing to do so." *Butler v. Hartford Tech. Ins., Inc.*, 243 Conn. 454, 462 (1997).

In this case, the Plaintiffs' complaint allegations and declarations support regarding Mr. Shieh and Ms. Ye as "employers" under either statute. The Plaintiffs allege that Mr. Shieh and Ms. Ye both "supervised and controlled employee work schedules" and "determined the rate and method of payment" (Am. Compl., ECF No. 54, ¶¶ 20-22), allegations that are deemed admitted by the Defendants' default. *Greyhound Exhibitgroup,* 973 F.2d at 158; *see also Torres v. Jin Xiang Trading Inc.*, No. 17-cv-2866 (RJD) (PK), 2020 WL 981408, at *6 (E.D.N.Y. Mar. 12, 2020) ("Plaintiffs' well-pleaded allegations" that individual defendants "controlled the terms and conditions of their employment, and determined the rate and method of their payment . . . support the conclusion that Defendants were Plaintiffs' employers[.]") All four Plaintiffs say in their declarations that they were paid by both Mr. Shieh and Ms. Ye. (ECF Nos. 91-1, ¶¶ 7-9 (Wei); 91-2, ¶¶ 7-9 (Zhong); 91-3, ¶¶ 7-9 (Zhu); 91-4, ¶¶ 7-9 (Meng)). Mr. Wei says that he was hired by both Mr. Shieh and Ms. Ye to work his 66.16-hour weekly shift, connoting that both defendants had the authority and ability to set his hours of employment. (ECF No. 91-1, ¶ 7.) And Messrs. Wei and Zhong say that they were fired by both Mr. Shieh and Ms. Ye. (ECF Nos. 91-1, ¶ 9 (Wei); 91-2, ¶ 9 (Zhong)). The record thus supports regarding both Mr. Shieh and Ms. Ye as "employers" even under the CMWA's "narrower" definition. *Andrade*, 2012 WL 3059616, at *4 ("The CMWA's definition of an 'employer' is narrower than the FLSA's[.]"); *Cancun Charlie's*, 2010 WL 7865081, at *6 (holding that a defendant qualified as an "employer" under the CMWA when, among other things, he hired and paid the plaintiff "and determined his rate of pay"). I therefore recommend that judgment enter against them as well as the Sichuan Pepper corporation.

### C.  The Tian Parties' Motion for Default Judgment

As noted above, the Tian Parties also seek a default judgment against the Defendants.  (ECF No. 85.)  Their motion has three principal elements.  (ECF No. 85-2.)  First, they seek to recover $13,858 in attorneys' fees that they claim to have incurred in defending against the Plaintiffs' complaint, pursuant to the Defendants' alleged contractual promise to indemnity them "from all liability, claims, losses, costs and expenses including attorneys' fees which may arise as a result of Sichuan Pepper, Inc.'s ownership of the business prior to the closing date."  (*Id.* (seeking $13,858 in attorneys' fees "for the first cross-clam [sic]"); *see also* ECF No. 68, ¶¶ 144-49 (first crossclaim, seeking contractual indemnification).)  Second, they seek $175,000 in unspecified additional damages pursuant to the same crossclaim.  (ECF No. 85-2, at ¶ 6(B).)  Third, they request an order declaring "that the sale agreement between Tian LLC, Sichuan Pepper Inc. and Micahel [sic] Shieh is null, void, and rescinded," evidently pursuant to their third crossclaim for breach of the covenant of good faith and fair dealing.  (*Id.* ¶ 6(D).)

The two damages claims lack a sufficient evidentiary foundation.  In default judgment proceedings, "[t]here must be an evidentiary basis for the damages sought by plaintiff," and where the plaintiff chooses to meet this burden with documents rather than live testimony, he should at a minimum present "detailed affidavits and documentary evidence."  *Cement & Concrete Workers Dist. Council Welfare Fund*, 699 F.3d at 234.  Here, the first and second claims are supported by nothing other than an *ipse dixit* statement from Mr. Cheng that he has been damaged.  (ECF No. 85-2.)  He claims, for example, that he is entitled to be indemnified under the sale contract for his attorneys' fees, but the copy of the contract that he filed along with his motion contains no such provision.  (ECF No. 85-3.)  His crossclaim alleges that the indemnification provision was contained in "a rider" with a "paragraph 33" (ECF No. 68, ¶ 145), but the contract that he filed

contains only seventeen numbered paragraphs, and moreover it is neither signed by the parties nor authenticated by his declaration.  (ECF Nos. 85-3, 85-2.)  He further claims to be entitled to $175,000 in additional damages, but he does not explain what these damages consist of, how he calculated them, or how they could plausibly arise from a $45,000 transaction.  (*See* ECF Nos. 85-2 (declaration that fails to explain basis for damage claims); 85-3 (purported contract, indicating that "[t]he purchase price to be paid by the Transferee is $45,000").)

The rescission claim is similarly unsupported.  "Under Connecticut law, the remedy of rescission and restitution is simply the unmaking of an agreement, i.e., 'a renouncement of the contract and any property obtained pursuant to the contract and places the parties, as nearly as possible, in the same situation as existed just prior to the execution of the contract.'"  *Aurigemma v. Arco Petro. Prods. Co.*, 734 F. Supp. 1025, 1033 (D. Conn. 1990) (quoting *Kavarco v. T.J.E., Inc.*, 2 Conn. App. 294, 299 (1984)).  It is therefore "a condition of rescission and restitution that the plaintiff offer" to restore the other party to its pre-contract position, *Bernstein v. Nemeyer*, 213 Conn. 665, 666 (1990), and here, the Tian Parties' submission contains no indication that they did so by, for example, offering to return control of the restaurant to Sichuan Pepper Inc.  (*See* ECF No. 85-2.)  In short, each element of the Tian Parties' lacks a sufficient evidentiary foundation, and I therefore recommend that their motion for default judgment (ECF No. 85) be denied without prejudice.  *See, e.g., Coburn v. P.N. Financial*, No. 13-cv-1006 (ADS) (SIL), 2015 WL 520346, at * (E.D.N.Y. Feb. 9, 2015) (denying motion for default judgment where "the record [was] inadequate to justify a finding of liability," but permitting plaintiff to renew motion at a later stage).

## IV.   CONCLUSION

For the foregoing reasons, I recommend that:

A.  Judgment enter in favor of the plaintiff Zhenhai Wei in the amount of $26,965.88, plus prejudgment interest of $7.39 per day beginning on June 6, 2017, and running through the date of the judgment;

B.  Judgment enter in favor of the plaintiff Fangqiong Zhong in the amount of $9,184.58, plus prejudgment interest of $2.52 per day beginning on February 17, 2018, and running through the date of the judgment;

C.  Judgment enter in favor of the plaintiff Junjie Zhu in the amount of $22,978.28, plus prejudgment interest of $6.30 per day beginning on February 1, 2018, and running through the date of the judgment;

D.  Judgment enter in favor of the plaintiff Fanhe Meng in the amount of $8,154.66, plus prejudgment interest of $2.23 per day beginning on May 10, 2018, and running through the date of the judgment;

E.  Each of the aforementioned judgments enter jointly and severally against each of the three Defendants;

F.  The Plaintiffs be awarded attorneys' fees in the amount of $35,918.40;

G.  The Plaintiffs be awarded costs in the amount of $698.15; and

H.  The Tian Parties' motion for default judgment be denied without prejudice to renewal.

This is a recommended ruling by a magistrate judge.  Fed. R. Civ. P. 72(b)(1); D. Conn. L. Civ. R. 72.1(C).  If any party wishes to object to this recommendation, it must file that objection with the Clerk of the Court within fourteen days.  Fed. R. Civ. P. 72(b)(2); D. Conn. L. Civ. R. 72.2(a).  If a party does not object within that time, it may not thereafter assign as error any claimed defect in this recommended ruling.  *Id.*  Failure to file a timely objection will also preclude appellate review.  *See* 28 U.S.C. § 636(b)(1); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d

15, 16 (2d Cir. 1989) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision."); *accord Impala v. U.S. Dep't of Justice*, 670 F. App'x 32 (2d Cir. 2016) (summary order).

*/s/ Thomas O. Farrish*
Hon. Thomas O. Farrish
United States Magistrate Judge